NOYD v CLAXTON, MORGAN, FLOCKHART & VanLIERE

NOYD v NBD BUSINESS FINANCE, INC

Docket Nos. 118878, 118879. Submitted August 7, 1990, at Grand
Rapids. Decided November 20, 1990, at 9:00 A.M.

Kent-Holland Industries, Incorporated, through Lois Noyd, Rob-
ert R. Wagner, and Louise M. Wagner, brought actions in the
Kent Circuit Court against Claxton, Morgan, Flockhart &
VanLiere, Certified Public Accountants, NBD Business Finance,
Inc., and others, claiming that their interests in certain loan
participation agreements, under which they loaned money to
NBD, were securities under the Uniform Securities Act. The
plaintiffs claimed that defendants NBD and Claxton, Morgan
violated the act by using misleading or untrue statements of
material fact in violation of the act, resulting in losses to the
plaintiffs after KHI filed bankruptcy. The trial court, Stuart
Hoffius, J., granted summary disposition for NBD with regard to
the securities violation claims and partial summary disposition
for Claxton, Morgan and individual defendants. Subsequently,
the court, Donald A. Johnston, III, J., denied the plaintiffs'
motion for leave to file a second amended complaint to add a
fraud claim against defendant Claxton, Morgan. The plaintiffs
appealed.

The Court of Appeals *held:*

1. The loan participation agreements were not securities as a
matter of law, and the trial court properly granted summary
disposition regarding the plaintiffs' claims relating to violations
of state securities laws.

2. The trial court did not err in denying the plaintiffs' motion
to file a second amended complaint.

Affirmed.

1. SECURITIES REGULATION — UNIFORM SECURITIES ACT — SECURITY.

The Uniform Securities Act expressly enumerates factors to be
considered in determining whether a contractual or quasi-con-

REFERENCES

Am Jur 2d, Securities Regulation-State §§ 26-28.

See the Index to Annotations under Uniform Securities Act.

tractual arrangement is a security within the meaning of the act (MCL 451.801[l]; MSA 19.776[401][1]).

2. Securities Regulation — Uniform Securities Act — Judicial Construction.

In interpreting the Uniform Securities Act, courts look beyond the form of the transaction to its substance, paying close attention to the economic realities of the situation; the basic economic reality of a security transaction under the act is the subjection of the investor's money to the risks of an enterprise over which the investor has no meaningful control (MCL 451.501 *et seq.*; MSA 19.776[101] *et seq.*).

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *David L. Nelson* and *Patrick Burkett*), for plaintiffs.

*Plunkett & Cooney, P.C.* (by *Lawrence R. Donaldson* and *Christine D. Oldani*), for Claxton, Morgan, Flockhart & VanLiere and Gregory Claxton and Donald Morgan.

*Honigman, Miller, Schwartz & Cohn* (by *Peter M. Alter* and *Mark A. Stern*), for NBD Business Finance, Inc.

Before: Danhof, C.J., and Sullivan and Neff, JJ.

Per Curiam. This is a consolidated appeal as of right from a Kent Circuit Court order granting summary disposition to defendant NBD Business Finance, Inc., on plaintiffs' claim that NBD violated the Michigan Uniform Securities Act (MUSA), MCL 451.501 *et seq.*; MSA 19.776(101) *et seq.* Plaintiffs also appeal the circuit court's grant of partial summary disposition for defendants Claxton, Morgan, Flockhart & VanLiere, Certified Public Accountants (Claxton, Morgan), and individual defendants Gregory Claxton and Donald Morgan, on plaintiffs' MUSA claim against those defendants. In

addition, plaintiffs appeal the circuit court's denial of their motion for leave to file a second amended complaint, which would have added a fraud claim against defendant Claxton, Morgan. We affirm.

In January of 1985, defendant NBD loaned Kent-Holland Industries, Incorporated (KHI), operating funds and took back a security interest in KHI's accounts receivable, assets and inventory. KHI had been formed sometime prior to 1985 as a result of a merger of two companies during Chapter XI reorganization proceedings in federal bankruptcy court. By May of 1985, KHI no longer complied with NBD's borrowing formula and NBD apparently refused to lend KHI any more money. In June of 1985, plaintiffs and NBD entered into the first of three "loan participation agreements" whereby plaintiffs loaned money to KHI through NBD. The agreement was set up after negotiations between NBD, Claxton, Morgan, which was KHI's accounting firm, and KHI's attorneys.

Under the agreements, plaintiffs received payments of 5.5 percent above the prime interest rate on any outstanding loans to KHI. Plaintiffs were to be repaid the loan principal only after NBD was paid in full for NBD's outstanding loans to KHI. If NBD realized upon the security interest it held in KHI, plaintiffs would also be able to realize the collateral under NBD's security interest, but, again, only after NBD's loan was satisfied. Thus, plaintiffs, by virtue of the agreements, had an interest that was junior to NBD's, but superior to KHI's unsecured creditors. The agreement expressly stated that plaintiffs were aware that KHI was not within NBD's borrowing formula.

Following the first agreement, plaintiffs Lois Noyd and Robert Wagner became directors of KHI. In November of 1985, Noyd became a forty-nine percent shareholder in KHI. Between June of 1985

and March of 1986, plaintiff Noyd loaned KHI a total of $160,000, and plaintiffs Robert and Louise Wagner loaned KHI a total of $165,000, pursuant to the three loan participation agreements.

In June of 1986, after KHI was unable to work out a compromise with the Internal Revenue Service and its other creditors, KHI filed for bankruptcy under Chapter VII of the federal bankruptcy laws. Plaintiffs were unable to recoup any of the money which they had loaned to KHI through the loan participation agreements. Plaintiffs then filed the instant actions, claiming that their interests in the loan participation agreements were securities under the MUSA. Plaintiffs claimed that defendants NBD and Claxton, Morgan violated the MUSA by failing to register the agreements as securities and by using misleading or untrue statements of material fact in violation of § 410 of the act, MCL 451.810; MSA 19.776(410). Plaintiffs' complaint raised additional claims of negligence against Claxton, Morgan and KHI's law firm. The lower court granted summary disposition to NBD and partial summary disposition to Claxton, Morgan and Gregory Claxton and Donald Morgan on plaintiffs' securities violation claims. Later, the court denied plaintiffs' motion to amend their complaint to add a fraud claim against Claxton, Morgan.

We will first address plaintiffs' claims that the loan participation agreements were securities under the MUSA and that the trial court erred by granting summary disposition to defendants NBD and Claxton, Morgan. We conclude that the agreements were not securities and that the circuit court properly granted summary disposition.

Defendants brought their motions for summary disposition under both MCR 2.116(C)(8) and (C)(10). The lower court orders do not specify the subrule

under which it was granting the motions. Since the primary disagreement was whether the agreements were securities as a matter of law, we conclude that the orders were issued under MCR 2.116(C)(8) and we will analyze this issue accordingly.

A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. *Formall, Inc v Community National Bank,* 166 Mich App 772, 777; 421 NW2d 289 (1988). All factual allegations in support of the claim are accepted as true, as well as any reasonable inferences or conclusions which can be drawn from the facts. *Kauffman v Shefman,* 169 Mich App 829, 833; 426 NW2d 819 (1988). The motion should be granted only where the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Scameheorn v Bucks,* 167 Mich App 302, 306; 421 NW2d 918 (1988), lv den 430 Mich 886 (1988).

Section 301 of the MUSA, MCL 451.701; MSA 19.776(301), makes it unlawful to offer or sell any security in this state unless it is registered under the act or is exempted under § 402, MCL 451.802; MSA 19.776(402). The term "security" is defined in MCL 451.801(l); MSA 19.776(401)(l):

> "Security" means any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; investment contract; voting-trust certificate; certificate of deposit for a security; certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such a title or lease; or, in general, any interest or instrument commonly known as a "security", or any certificate of inter-

est or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. *"Security" includes any contractual or quasi contractual arrangement pursuant to which: (1) a person furnishes capital, other than services, to an issuer; (2) a portion of that capital is subjected to the risks of the issuer's enterprise; (3) the furnishing of that capital is induced by the representations of an issuer, promoter, or their affiliates which give rise to a reasonable understanding that a valuable tangible benefit will accrue to the person furnishing the capital as a result of the operation of the enterprise; (4) the person furnishing the capital does not intend to be actively involved in the management of the enterprise in a meaningful way; and (5) a promoter or its affiliates anticipate, at the time the capital is furnished, that financial gain may be realized as a result thereof.* (Emphasis supplied).

The statutory restriction on the offer or sale of securities is designed to protect the public against fraud and deception in the issuance, sale, exchange or disposition of securities. *People v Dempster,* 396 Mich 700, 704; 242 NW2d 381 (1976). In interpreting our security statutes, we look beyond the form of the transaction to its substance, paying close attention to the economic realities of the situation. *Ansorge v Kellogg,* 172 Mich App 63; 431 NW2d 402 (1988), lv den 431 Mich 912 (1988). The basic economic reality of a security transaction under the MUSA is the subjection of the investor's money to the risks of an enterprise over which the investor has no managerial control. *People v Breckenridge,* 81 Mich App 6, 15; 263 NW2d 922 (1978), lv den 402 Mich 915 (1978). The *Breckenridge* Court noted that the Uniform Securities Act is "intended to protect investors, not persons engaged in commercial loan transactions. . . ." *Id.,* p 16.

These general principles are consistent with the statutory five-part test contained in § 401 of the MUSA for determining whether a contractual arrangement is a security transaction. Applying that test, we are unable to conclude that the loan participation agreements were securities.

Under part (2) of the test it could be argued, in a broad sense, that the capital furnished by plaintiffs to KHI was "subjected to the risk" of KHI's enterprise, because there was the possibility that KHI would fail and that KHI's collateral would not cover the loan amount. See *Rzepka v Michael,* 171 Mich App 748, 758; 431 NW2d 441 (1988). However, that is a risk present in all commercial loan transactions. This interpretation would subject all commercial loans to the registration requirements of the statute, which would be absurd. *Id.* We believe that since, under the agreement, plaintiffs were to be paid back the full amount, plus interest, of the capital which they loaned to KHI, their capital was not "subjected to the risk" of KHI's enterprise within the meaning of the statute. For similar reasons, the transactions also fail to comport with part (3) of the statutory test. Plaintiffs stood to receive no tangible benefit under the agreement from the improved operations of KHI—their return was fixed at principal plus interest. Finally, under part (4), we believe that by acting as directors of KHI during two of the three relevant transactions, plaintiffs were "actively involved in the management" of KHI "in a meaningful way." Therefore, the transactions at issue were not securities transactions under the MUSA.

The economic reality of this situation was that, in form as well as substance, plaintiffs engaged in a commercial loan transaction in which NBD acted as a conduit for the transference of plaintiffs' money to KHI. Plaintiffs enjoyed the benefit of

NBD's security interest in KHI's assets, which would not have been the case had plaintiffs loaned the money directly to KHI. That KHI's assets were not ultimately sufficient to cover plaintiffs' loans does not alter the character of the transaction. That the loan participation agreements may have been offered to other persons also does not change the character of the transactions. The definitions of "security" supplied in § 401 focus on the nature of the transaction, not on the situation under which the transaction was initiated. As a matter of law, the agreements were not securities and the lower court therefore properly granted summary disposition on plaintiffs' claims relating to violations of state securities laws.

In plaintiffs' second and final issue, they argue that the trial court abused its discretion by denying their motion for leave to file a second amended complaint, which would have added a fraud claim against Claxton, Morgan. We disagree.

Under MCR 2.118(A)(2), leave to amend pleadings should be freely given when justice so requires. Leave to amend should be denied only for particularized reasons, such as undue delay, bad faith or dilatory motive on the movant's part, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or where amendment would be futile. *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 656; 213 NW2d 134 (1973); *Terhaar v Hoekwater,* 182 Mich App 747, 750; 452 NW2d 905 (1990). The court must specify its reasons for denying the motion; a failure to do so requires reversal, unless amendment would be futile. *Terhaar,* p 751; *Cummings v Detroit,* 151 Mich App 347, 352; 390 NW2d 666 (1986), lv den 426 Mich 851 (1986). We will not reverse a lower court's denial of a motion to amend absent an abuse of discretion. *Tolbert v*

*U S Truck Co,* 179 Mich App 471, 473; 446 NW2d 484 (1989), lv den 433 Mich 920 (1989).

In this case, the trial court expressly addressed the *Fyke* reasons on the record. The court noted that the memorandum which formed the basis of plaintiffs' fraud assertion had been discovered four or five months earlier, but plaintiffs did not at that time seek to amend their complaint. The court stated that defendant would be somewhat prejudiced by the amendment because discovery was completed and mediation and trial dates were approaching. The court expressed doubts that a fraud claim was viable considering the relationships of the parties to each other and to KHI. The court also noted that plaintiffs would not be prejudiced by the denial because there was still time for plaintiffs to refile their claim. After reviewing the record, including plaintiffs' proposed amended complaint, we find that the trial court did not err in denying plaintiffs' motion to amend. The reasons supplied by the court were not overwhelming, but they were supported in the record and were sufficient to uphold the court's decision.

Affirmed.