MICHELSON v VOISON

Docket No. 233114. Submitted December 4, 2002, at Lansing. Decided January 10, 2003, at 9:05 A.M.

Ernestine D. Michelson brought an action in the Saginaw Circuit Court against Glenn A. Voison and others, alleging breach of contract, misrepresentation or fraud, and a violation of the Michigan Uniform Securities Act (MUSA), MCL 451.501 *et seq.*, with regard to the defendants' sale of a viatical settlement to the plaintiff. The court, Leopold P. Borrello, J., denied a motion for summary disposition and to compel arbitration made by defendants Future First Financial Group, Inc., Randy Stelk, Fidelity Group, Inc., and Charles R. Sussman, ruling that viatical settlements qualify as securities, the plaintiff's claim was properly before the court, the parties' agreement represented an improper unregistered security, and the agreement and its arbitration clause were void. The court granted summary disposition in favor of the plaintiff with regard to her claims under the MUSA. The defendants who brought the motion appealed by leave granted.

The Court of Appeals *held*:

1. The MUSA's use of the term "security" includes a viatical settlement, which is an investment contract pursuant to which an investor acquires an interest in the life insurance policy of a terminally ill person (the viator) at a discount dependent on the insured's life expectancy. When the insured dies, the investor receives the benefit of the insurance.

2. The court properly rescinded a security contract made in violation of statutory law and public policy because the defendants were not licensed or registered to sell securities. Because the plaintiff alleged a misrepresentation in the defendants' procurement of the viatical settlement agreement, the arbitration clause may be avoided.

3. The court properly found no genuine issue of material fact regarding the plaintiff's claims under the MUSA.

4. The appellants were properly determined to be subject to the terms of the MUSA under MCL 451.810(b).

Affirmed.

HOEKSTRA, J., dissenting, stated that the agreement to purchase a viatical settlement is not void and, therefore, the plaintiff is obligated to submit to arbitration. Selling a viatical settlement in violation of the requirements of the MUSA does not void the agreement to purchase the settlement, but subjects the defendants to the penalties provided in the MUSA. The order granting summary disposition in favor of the plaintiff should be reversed and the matter should be remanded for entry of an order granting the defendants' motion for summary disposition and to compel arbitration.

SECURITIES REGULATION — UNIFORM SECURITIES ACT — VIATICAL SETTLEMENTS — WORDS AND PHRASES — SECURITY.

The term "security," as used in the Michigan Uniform Securities Act, includes viatical settlements; a viatical settlement is an investment contract pursuant to which an investor acquires an interest in the life insurance policy of a terminally ill person at a discount dependent on the insured's life expectancy and receives the benefit of the insurance when the insured person dies (MCL 451.501 *et seq.*).

*Cynthia Fullwood PLC* (by *Cynthia Fullwood*) for the plaintiff.

*Butzel Long* (by *Dennis K. Egan*) for Future First Financial Group, Inc., Randy Stelk, Fidelity Group, Inc., and Charles R. Sussman.

Before: NEFF, P.J., and HOEKSTRA and O'CONNELL, JJ.

O'CONNELL, J. Defendants Future First Financial Group, Inc., Randy Stelk, Fidelity Group, Inc., and Charles R. Sussman appeal by leave granted from an order denying their motion for summary disposition and to compel arbitration and granting plaintiff Ernestine Dorothy Michelson summary disposition pursuant to MCR 2.116(I)(2) on her claims under the Michigan Uniform Securities Act (MUSA), MCL 451.501 *et seq.* We affirm.

After signing an agreement to purchase a viatical settlement[1] through defendants, plaintiff commenced this suit alleging breach of contract, misrepresentation or fraud, and a violation of the MUSA for a sale of unregistered securities. In her complaint, plaintiff named as defendants Glenn A. Voison and Voison Agency, Inc.,[2] the person and the agency who sold the viatical settlement to her. Only defendants Future First, Stelk, Fidelity Group, and Sussman, the brokers and their officers, filed the motion for summary disposition under MCR 2.116(C)(7) and to compel arbitration. They argued that plaintiff's claim was improperly before the circuit court because the parties' viatical settlement agreement contained a binding arbitration clause. The trial court held: (1) viatical settlements qualify as securities; (2) plaintiff's claim was properly before the circuit court; (3) the parties' agreement represented an improper unregistered security; (4) the agreement and its arbitration clause were void; and (5) plaintiff was entitled to summary disposition.

The grant or denial of summary disposition as well as the existence and enforceability of an arbitration agreement are questions of law for a court to deter-

---

[1] "A viatical settlement is an investment contract pursuant to which an investor acquires an interest in the life insurance policy of a terminally ill person [the viator]—typically an AIDS victim—at a discount of 20 to 40 percent, depending upon the insured's life expectancy. When the insured dies, the investor receives the benefit of the insurance. The investor's profit is the difference between the discounted purchase price paid to the insured and the death benefit collected from the insurer, less transaction costs, premiums paid, and other administrative expenses." *Securities & Exchange Comm v Life Partners, Inc*, 318 US App DC 320, ___; 87 F3d 536, 537 (1996).

[2] Defendants Glenn A. Voison and Voison Agency are not parties to this interlocutory appeal.

mine de novo. *Groncki v Detroit Edison Co*, 453 Mich 644, 649-650; 557 NW2d 289 (1996); *Watts v Polaczyk*, 242 Mich App 600, 603; 619 NW2d 714 (2000). Under MCR 2.116(C)(7), we must accept the well-pleaded allegations of the nonmoving party as true and construe them most favorably to the nonmoving party. *Grazia v Sanchez*, 199 Mich App 582, 583; 502 NW2d 751 (1993).

Defendants first argue that the court erred in holding that viatical settlements[3] are securities under the MUSA and that the parties' agreement, including its arbitration clause, was therefore void. We disagree.

Under MCL 451.810(a), any person who offers or sells a security in violation of the MUSA or by misrepresentation of a material fact "is liable to the [buyer] . . . and the buyer may sue either at law or in equity to recover the consideration paid for the security . . . ." MCL 451.810(h) expressly states that "[t]he rights and remedies provided by this act *are in addition to any other rights or remedies that may exist at law or in equity* . . . ." (Emphasis added.) Because the MUSA does not specifically allow avoidance of a contract, we must determine whether the trial court was authorized to void the parties' agreement under another right or remedy existing at law or in equity.

Contracts founded on acts prohibited by a statute, or contracts in violation of public policy, are void. *Maids Int'l, Inc v Saunders, Inc*, 224 Mich App 508, 511; 569 NW2d 857 (1997). The MUSA does not

---

[3] The circuit court referred to the investment product defendants sold to plaintiff as a "viatical settlement contract." We note that the investment product itself and the separate contract to purchase it are variously called viatical settlements, agreements, or contracts. In this case, the "agreement" was the purchasing vehicle that contained the arbitration clause.

expressly include viatical settlements in its definition of a "security." Furthermore, we have been unable to discover any statutory law or case law specifically indicating whether viatical settlements are included in the MUSA's definition of a "security."[4]

"In interpreting our security statutes, we look beyond the form of the transaction to its substance, paying close attention to the economic realities of the situation." *Noyd v Claxton, Morgan, Flockhart & Van-Liere*, 186 Mich App 333, 338; 463 NW2d 268 (1990). The MUSA "shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it and to coordinate the interpretation and administration of this act with the related federal regulation." MCL 451.815. Thus, it is appropriate to consider other state and federal decisions.

*Securities & Exchange Comm v Life Partners, Inc*, 318 US App DC 320, ___; 87 F3d 536, 538 (1996), held that viatical settlements are not securities under the federal securities laws. The court held that the investor was not dependant on the efforts of others,[5] but instead relied "entirely upon the mortality of the insured . . . ." 318 US App DC ___; 87 F2d 548. However, in *Siporin v Carrington*, 200 Ariz 97, 104; 23

---

[4] We note that the Legislature has enacted a separate act in the Insurance Code regulating the sale of original viatical settlement contracts without reference to whether these contracts can be resold as securities. See MCL 550.521 *et seq.* The viatical settlement contract act largely regulates the original contract between the viator (the insured party) and the insurance provider, not its resale to investors such as plaintiff. No Michigan appellate court has interpreted the act.

[5] "[A]n investment contract is a security subject to [the Securities Act of 1933, 15 USC 77a *et seq.*] if investors purchase with (1) an expectation of profits arising from (2) a common enterprise that (3) depends upon the efforts of others." *Life Partners, supra* 318 US App DC ___; 87 F3d 542, citing *Securities & Exchange Comm v WJ Howey Co*, 328 US 293, 298-299; 66 S Ct 1100; 90 L Ed 1244 (1946).

P3d 92 (Ariz App, 2001), the court held that the "mortality of the viator is merely another factor to be considered . . . ." The *Siporin* court determined that viatical settlements are securities under Arizona's securities laws, and that "[t]he *Life Partners* rationale does not serve the prophylactic and remedial purposes" of the laws. *Id.* Under current Arizona law, viatical settlements are securities. Ariz Rev Stat 44-1801.

Similarly, several other states have also included viatical settlements in the definition of a security: Alas Stat 45.55.990; Cal Corp Code 25019; Ga Code Ann 10-5-2;[6] Ind Code 23-2-1-1; Iowa Code 502.102; Me Rev Stat Ann, Title 32, 10501; Miss Code Ann, 75-71-105; Neb Rev Stat 8-1102; NC Gen Stat 78A-2;[7] ND Cent Code 10-04-02; SD Codified Laws Ann 47-31A-401; and W Va Code 32-4-401.[8]

Finally, Michigan Department of Commerce Corporation & Securities Bureau Bulletin No. 2002-07-SEC by Commissioner of Financial and Insurance Services Frank Fitzgerald specifically includes viatical settlements within the MUSA's definition of a "security." Although it does not have the full force or effect of law, MCL 24.203(6), we generally give deference to administrative agency interpretations. *McGill v Automobile Ass'n of Michigan*, 207 Mich App 402, 407, n 1; 526 NW2d 12 (1994). Considering that the MUSA is intended to be broadly interpreted and provide conformity with other states' securities laws, and the

---

[6] "Viatical investment" was added to the definition of a "security" in Ga Code Ann 10-5-2(a)(26) on July 1, 2002. See 2002 Ga L 792, §§ 1, 2.

[7] "Viatical settlement" was added to the definition of a "security" in NC Gen Stat 78A-2 (11) on April 1, 2002. See 2001 Acts 308.

[8] "Viatical settlement" was added to the definition of a "security" in W Va Code 32-4-401(n) in July 2001. See 2001 Acts 308.

intent of the Office of the Commissioner of Financial and Insurance Services, we find that the MUSA's use of the term "security" includes viatical settlements.

Therefore, the trial court properly rescinded a security contract made in violation of statutory law and public policy because defendants were not licensed or registered to sell securities.[9] See *Maids Int'l, supra* at 511. Because plaintiff alleged a misrepresentation in defendants' procurement of the viatical settlement agreement, the arbitration clause may be avoided. See *Watts, supra* at 609. When a contract is rescinded, the contract is abrogated from the beginning, and none of its provisions, including the present contract's arbitration clause, are applicable. *Lash v Allstate Ins Co*, 210 Mich App 98, 102; 532 NW2d 869 (1995).

Defendants next argue that the court erred in finding that there was no genuine issue of material fact regarding plaintiff's MUSA claims. We disagree.

The court granted plaintiff summary disposition pursuant to MCR 2.116(I)(2). "Summary disposition is properly granted [under MCR 2.116(I)(2)] to the opposing party if it appears to the court that that party, rather than the moving party, is entitled to judgment." *Sharper Image Corp v Dep't of Treasury*, 216 Mich App 698, 701; 550 NW2d 596 (1996). The MUSA's definition of the term "security" and its application to the parties' agreement are questions of law

---

[9] Judge O'CONNELL finds it is unseemly and against public policy in a civilized society to have such a practice as buying a life insurance policy in the hope that someone will die to obtain the benefit. See *Life Partners, supra.* Plaintiffs appearing in court alleging that the principal did not die soon enough to satisfy the terms and conditions of the viatical agreement would present quite a sight in a Michigan court.

concerning statutory interpretation. See *Oade v Jackson Nat'l Life Ins Co*, 465 Mich 244, 250; 632 NW2d 126 (2001). Thus, the court's decision was based on a legal inquiry and factual proofs were unnecessary. See MCR 2.116(I)(2).

Finally, defendants contend that not all defendants were liable for the MUSA claim and the court erred in granting plaintiff summary disposition against all defendants. We disagree.

Under the MUSA,

[e]very person who directly or indirectly controls a seller . . . every partner, officer, or director of the seller, every person occupying a similar status or performing similar functions, every employee of the seller who materially aids in the sale, and every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with and to the same extent as the seller . . . . [MCL 451.810(b).]

According to the parties' agreement, plaintiff purchased the viatical settlement from defendant Future First. *Id.* Thus, this defendant was liable under MCL 451.810(b) as a seller. Defendant Fidelity Group was also named in the agreement as the purchase administrator. *Id.* Therefore, as a material aid to the sale, Fidelity Group was also liable pursuant to MCL 451.810(b). Finally, defendants Stelk and Sussman were officers of defendants Future First and Fidelity Group, respectively. Thus, they were also clearly liable under MCL 451.810(b). Because the trial court has not granted or denied summary disposition with respect to plaintiff's claims against defendants Glenn A. Voison and Voison Agency, we need not consider the appellants' argument that the Voison defendants were similarly situated.

Affirmed.

NEFF, P.J., concurred.

HOEKSTRA, J. *(dissenting)*. I respectfully dissent. At issue in this case is whether plaintiff must submit to arbitration of her dispute with defendants regarding an agreement to purchase a viatical settlement. The trial court held, and the majority agrees, that the arbitration provision of the agreement to purchase a viatical settlement is unenforceable because the agreement itself is void. I conclude that the agreement to purchase a viatical settlement is not void and that plaintiff therefore is obligated to submit to arbitration.

Whether the parties' agreement for the purchase of a viatical settlement is void and unenforceable is controlled by this Court's decision in *Maids Int'l, Inc v Saunders, Inc*, 224 Mich App 508; 569 NW2d 857 (1997). There, the plaintiff sold franchises to the defendants and brought an action to recover fees and royalties allegedly owed under the terms of the franchise agreements. *Id.* at 509. The trial court, relying on the well-established principle that contracts founded on acts that are prohibited by statute, or contracts in violation of public policy, are void, held that the franchise agreements between the parties were void and unenforceable because the agreements were entered into at a time when the plaintiff was in violation of Michigan's Franchise Investment Law (FIL), MCL 445.1501 *et seq. Maids, supra* at 510-512. This Court reversed, determining that the franchise contracts between the parties were not void because "[e]ntering into a franchisee-franchisor relationship violates neither public policy nor any statute of which we are aware." *Id.* at 511. This Court explained that the Legislature, by enacting the FIL, recognized the

validity of franchise agreements. Further, this Court noted that the FIL sets forth the various requirements a franchisor must meet for selling franchises in this state and sets forth the penalties for violating those requirements. Thus, this Court concluded: "There is no support for the trial court's conclusion plaintiff's violation rendered the contract void and unenforceable. Defendants' attempt to use a general public policy argument must fail where the Legislature has clearly addressed the public policy of the matter at issue." *Id.* at 512.

I believe that this Court's analysis in *Maids* applies to the resolution of whether the agreement to purchase a viatical settlement in the present case is void and unenforceable. The majority here holds that a viatical settlement is a security that is subject to the Michigan Uniform Securities Act (MUSA), MCL 451.501 *et seq.*, and that the agreement to purchase a viatical settlement, including the provision to arbitrate disputes arising from the agreement, is void because defendants were not licensed or registered to sell securities in Michigan as required by the MUSA. The majority, however, engages in the same reasoning that this Court rejected in *Maids*. Selling a viatical settlement in violation of the requirements of the MUSA does not void the agreement to purchase a viatical settlement for the same reason that selling a franchise in violation of the FIL does not void a franchise agreement. The *Maids* Court recognized that there is a difference between doing an act in violation of the requirements of statutes that regulate that act, and the doing of an act that a statute specifically prohibits. The latter can result in a contract being voided because it is contrary to the statute and

public policy; however, the former is merely subject to the penalties provided in the statute. Here, defendants' alleged violation of the MUSA is failing to register or to be licensed to sell securities in violation of the requirements of the MUSA. That being the case, plaintiff's remedies lie within the penalties provided in the MUSA, but do not include having the purchase agreement declared void for being in violation of a statute or being contrary to public policy.

Consequently, I disagree with the majority's holding that the agreement to purchase a viatical settlement is void. Because the agreement is not void, the arbitration provisions of the agreement are valid and enforceable.[1] I would reverse and remand with instructions to grant defendants' motion for summary disposition and to compel arbitration.

---

[1] I would also find without merit plaintiff's other claim that the arbitration agreement is unenforceable because the contract does not implicate interstate commerce. The agreement that plaintiff signed is with a Florida company and presumably the viator also is not a Michigan resident.