*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMER FASO,

Plaintiff-Appellant,

v

THOMAS E. MEYER, KATHLEEN D. MEYER,
and COMMUNITY FIRST TITLE AGENCY, LLC,

Defendants-Appellees.

UNPUBLISHED
August 4, 2022

No. 358572
Tuscola Circuit Court
LC No. 20-031318-CH

Before: SHAPIRO, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

Plaintiff appeals as of right the order granting defendants', Thomas Meyer's and Kathleen Meyer's, motion for summary disposition. We reverse and remand.

## I. FACTUAL BACKGROUND

This case arises out of a dispute over the sale of land located at 2304 W. Sanilac Road in Caro, Michigan (the property) owned by defendants, Thomas Meyer and Kathleen Meyer (defendants). On September 14, 2020, defendants and plaintiff executed a sales contract for the sale and purchase of the property for $90,000. Under the terms of the sales contract, plaintiff deposited $5,000 with defendant, Community First Title Agency, LLC.[1] The parties all signed the sales contract.

On October 9, 2020, plaintiff filed a complaint requesting specific performance of the sales contract, alleging defendants had refused to sell the property and failed to provide the title commitment requirement by the sales contract. Defendants moved the trial court for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10), arguing that the sales contract "failed

---

[1] Defendant Community First Title Agency, LLC did not file a brief on appeal. Therefore, "defendants" refers only to Thomas and Kathleen Meyer.

to reflect a meeting of the minds as to all the central terms of a transaction for conveyance of a commercial building and associated real property." The trial court concluded:

> The Court's understanding of basically what happened here, there was a . . . form purchase agreement entered into that basically was an agreement to enter into a land contract. Now, there were payment terms, but that was about the extent of . . . the specifics in the sales contract. And so, an agreement to enter into an agreement is not necessarily under Michigan law something that can be specifically enforced.

> And so, the Court will grant summary disposition pursuant to MCR 2.116(C)(8). And the Court finds that there was no meeting of the minds. So, as far as . . . any material . . . issue of material fact as to the agreement, there was no agreement. So, the Court grants [summary disposition] as to [(C)(10)] as well.

This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision to grant or deny summary disposition. *Varela v Spanski*, 329 Mich App 58, 68; 941 NW2d 60 (2019). "A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint," and may be granted when "a claim is so clearly unenforceable that no factual development could possibly justify recovery." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159, 160; 934 NW2d 665 (2019). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. at 160. "However, the mere statement of a pleader's conclusions, unsupported by allegations of fact, will not suffice to state a cause of action." *ETT Ambulance Serv Corp v Rockford Ambulance*, *Inc*, 204 Mich App 392, 395; 516 NW2d 498 (1994).

On the other hand, a motion under MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *El-Khalil*, 504 Mich at 160. A trial court may only grant a motion under MCR 2.116(C)(10) when the evidence, viewed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact. *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. at 160 (quotation marks and citations omitted). The court considers "a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties . . . ." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The moving party can satisfy its burden of showing there is no genuine issue of material fact by: (1) submitting evidence that negates an essential element of the nonmoving party's claim or (2) demonstrating that the nonmoving party's evidence cannot establish an essential element of the nonmoving party's claim or defense. *Id*. (quotation marks and citation omitted). Once the moving party meets that burden, the burden shifts to the nonmoving party to submit evidence establishing there is a genuine issue of material fact. *Id*.

Finally, summary disposition under MCR 2.116(I)(2) is properly granted to the opposing party "if it appears to the court that that party, rather than the moving party, is entitled to judgment." *Michelson v Voison*, 254 Mich App 691, 697; 658 NW2d 188 (2003) (quotation marks and citation omitted).

## III.  LAW AND ANALYSIS

Plaintiff contends the trial court erred in denying his motion for summary disposition under MCR 2.116(I)(2), and granting defendants' motion for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10), because the sales contract contained all of the essential terms required by Michigan law for enforcement.  We agree.

"Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement." *Universal Underwriters Ins Co v Kneeland*, 464 Mich 491, 496; 628 NW2d 491 (2001).  "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *In re Egbert R Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008).  "Whether the parties intend to be bound only by a formally written and executed final document is a question of fact, not a question of law; in most cases the question is properly left to the jury." *Opdyke Investment Co v Norris Grain Co,* 413 Mich 354, 360; 320 NW2d 836 (1982).

> A contract to make a subsequent contract is not per se unenforceable; in fact, it may be just as valid as any other contract.  Like any other contract, a contract to make a contract can fail for indefiniteness if the trier of fact finds that it does not include an essential term to be incorporated into the final contract.  [*Id*. at 359 (citations omitted).]

Only the essential terms of a contract need be reduced to writing.  *Id*. at 369.

"Essential terms for any contract to sell land are the names of parties, the subject matter, mutual promises, and price and terms." *Zurcher v Herveat*, 238 Mich App 267, 283 n 11; 605 NW2d 329 (1999).  Our Michigan courts have recognized that a valid land contract must include the following essential terms: (1) name of the parties; (2) accurate description of the property; (3) provides for marketable title; (4) fixed contract price; (5) the amount and time of installment payments, (6) the interest rate, (7) the adjustment of taxes and assessments, and (8), "by plain inference it provides right of possession in the vendee." *Rathbun v Herche*, 323 Mich 160, 165; 35 NW2d 230 (1948); see *Zurcher v Herveat*, 238 Mich App at 286-287.  Additionally, "[w]hile provisions as to defeasance, insurance, repairs, and payment of taxes might properly have been included, they are not essential to the validity, or decree for specific performance, of a land contract, where said agreement is definite as to parties, property, consideration, terms and time of performance." *Rathbun*, 323 Mich at  165-166 (quotation marks and citation omitted).

Parties must reach a meeting of the minds on all material terms in order for a contract to be enforceable.  "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Kamalnath v Mercy Memorial Hosp Corp*, 194 Mich App 543, 548; 487 NW 2d 499 (1992) (quotation marks and

citations omitted). The phrase "meeting of the minds" is a "figure of speech for mutual assent." *Id*. at 548-549.

Assuming there is a meeting of the minds, it is the responsibility of a trial court to enforce the equities of the parties "in such a manner as to put them as nearly as possible in the position that they would have occupied had the conveyance of the real property occurred when required by the contract." *Godwin v Lindbert*, 101 Mich App 754, 758; 300 NW2d 514 (1980). Specific performance is one possible remedy, but it is to be used within the discretion of the court. *Zurcher*, 238 Mich App at 300. However, "specific performance of a contract for the purchase of real estate may not be arbitrarily refused, but in the exercise of sound legal discretion should be granted, in the absence of some showing that to do so would be inequitable." *Id*. (quotation marks and citation omitted).

> In granting specific performance, a trial court may award such additional or incidental relief as is necessary to adequately sort out the equities of the parties, and should endeavor to put the parties as nearly as possible in the position that they would have occupied had the conveyance of the real property occurred when required by the contract. [*Giannetti v Cornillie (On Remand)*, 209 Mich App 96, 98; 530 NW2d 121 (1995).]

Specific performance is appropriate where there is no adequate remedy at law and the terms of the agreement are sufficiently certain to ensure that the court can "proceed intelligently and practically in carrying into execution the very things agreed on and standing to be performed." *Czeizler v Radke*, 309 Mich 349, 358; 15 NW2d 665 (1944), quoting *Blanchard v Detroit, Lansing & Lake Mich R Co*, 31 Mich 43, 53 (1875). However, if a court cannot determine that all the essential terms of a contract are agreed upon, it cannot create these unknown terms and then order specific performance. *Czeizler*, 309 Mich at 358.

In granting defendants' motion under MCR 2.116(C)(8), the trial court reasoned that "an agreement to enter into an agreement is not necessarily under Michigan law something that can be specifically enforced." Regarding MCR 2.116(C)(10), the trial court concluded that there was "no meeting of the minds. . . . So, as far as . . . any material . . . issue of material fact as to the agreement, there was no agreement." We conclude that the trial court erred by granting summary disposition on both grounds.

To begin with, the trial court erred by suggesting that the sales contract, the document executed by the parties, cannot constitute an actual and enforceable contract. There is no indication in Michigan law that a sales contract to enter into a land contract is not an enforceable contract. As indicated, a contract to make a subsequent contract can be enforceable if it includes the essential terms to be incorporated into the final contract. See *Opdyke Investment Co,* 413 Mich at 359.

The sales contract was a valid and enforceable contract because it contained all of the essential terms of the land contract. The contract in this case contains the names of the parties, the location and nature of the property being sold, the price, the installment payment schedule and interest rate, the adjustment of taxes and assessments, marketable title terms, and other basic terms of the sale. See *Rathbun*, 323 Mich at 165; *Zurcher*, 238 Mich App at 286-287. There is no evidence that suggests a lack of meeting of the minds between the parties regarding these essential

terms. Additionally, there is no language in the signed sales contract regarding the roof repairs. Only defendant Thomas Meyer claims that plaintiff needed to consult with a contractor before the sale could be completed. No additional evidence supports this claim. Moreover, both parties signed the sales contract that states, at the top of the very first page, that the property is being sold "as is." "This court has many times held that one who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms." *Farm Bureau Mut Ins Co v Nikkel*, 460 Mich 558, 567; 596 NW2d 915 (1999) (quotation marks and citation omitted). Defendants' voluntary signing of the sales contract presumes they read the contract and saw the property was being sold "as is," which includes the roof repairs not being completed before closing. Further, defendants could have included a repair provision as an additional condition in the sales contract, just as they included the condition regarding the failure to make installment payments.

As recognized in *Rathbun*, 323 Mich at 165, because the sales contract includes the essential terms for a valid land contract, the contract is complete and valid notwithstanding the fact that it does not contain any provision as to repairs. See *Zurcher*, 238 Mich App at 286. The fact that the sales contract did not contain any provision regarding the repair of the roof does not make the sales contract invalid or unenforceable.

Defendants argue that granting specific performance of the sales contract would require additional supervision. Aside from the fact that defendants fail to elaborate on this position, their argument is contradicted by plaintiff's repeated assurances that he, not defendants, would be the one fixing the roof. Indeed, plaintiff stated that he informed defendants that he would fix the roof in approximately six to eight months, which would have been several months after the closing date. Because there is no indication that the trial court would not have been able to "proceed intelligently and practically in carrying into execution the very things agreed on," *Czeizler*, 309 Mich at 358, defendants' argument is unavailing.

Defendants further argue that the presence of unchecked boxes within the sales contract suggests the impropriety of specific performance. They first highlight § 3, "Method of Payment," which provides a number of options for payment of the sale price. The box next to "Land Contract" is selected and provides the terms of the installment payment plan decided on by the parties. Any unchecked boxes simply reflect that those payment options were not selected by the parties. Defendants also highlight § 13, titled "Property Inspection," which offers two choices: (1) buyer chooses to inspect the property, or (2) buyer chooses not to inspect the property. The parties' failure to check either of these boxes, however, is not fatal to the sale of the property. Moreover, this section also provides, "Buyer has personally inspected the property and accepts it in its AS IS present condition and agrees that there are no additional written or oral understanding except as otherwise provided in this contract." As noted above, both parties signed the sales contract, leading to the presumption that they both read the sales contract. Defendants cannot now argue that plaintiff is alone responsible for failing to check the boxes in the contract and that such a failure allows defendants not to close on the sale, particularly given the acknowledged "as is" nature of the sale.

Defendants also argue that specific performance is not warranted because plaintiff never completed a land contract, which they maintain was an essential part of the sales contract. This argument falls short because the sales contract does not specify how the parties were to create the

land contract, nor does it specify which party is responsible for doing so. Section 3 states that the payment process will include the signing of a land contract, but it does not require plaintiff to create that land contract. It is merely a statement of the parties' intentions regarding the process for closing on the sale. This conclusion is bolstered by the trial court's recognition that, while the sales contract was "an agreement to enter into a land contract," it did not specifically state which party was to create the land contract. Moreover, as discussed earlier, the sales contract contained the essential terms for a valid land contract. Therefore, defendants' argument falls short.

Plaintiff argues defendants failed to provide the commitment for title insurance contemplated by § 4 of the sales contract. Section 4 provides, in relevant part:

> **Title Insurance**. Seller shall provide to the Buyer, at Seller's expense, an owner's policy of title insurance with standard exceptions in the amount of the sales price. Seller will apply for a commitment for title insurance within 7 days after the Buyer has waived all other contingencies in this Agreement.

This argument falls short, however, because the sales contract only discusses that commitment in the context of plaintiff waiving "all other contingencies" in the sales contract. Because there is no evidence plaintiff has waived "all other contingencies," plaintiff's argument is unavailing.

Plaintiff further asserts that the trial court erred in denying plaintiff's request for relief under MCR 2.116(I)(2) because all the essential terms of the sale were included in the sales contract. Plaintiff contends he is entitled to specific performance. However, plaintiff failed to adequately brief this issue. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position."). "[A]n appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 626-627; 750 NW2d 228 (2008) (quotation marks, citation, and alteration omitted). Because plaintiff failed to support his argument with any legal reasoning or evidence, he has abandoned the argument and we need not consider it.

Given the fact-intensive nature of the inquiry as to whether plaintiff is entitled to specific performance, we remand for further proceedings so the trial court can determine whether plaintiff is entitled to summary disposition under MCR 2.116(I)(2).

Reversed and remanded. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett