*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN HAUER,

        Plaintiff-Appellant,

v

MAY BUILDERS, INC.,

        Defendant-Appellee.

UNPUBLISHED
December 23, 2024
9:44 AM

No. 367516
Ingham Circuit Court
LC No. 23-000107-CK

Before: BORRELLO, P.J., and MALDONADO and WALLACE, JJ.

PER CURIAM.

In this action for breach of contract, plaintiff appeals by right the trial court's opinion and order granting summary disposition in favor of defendant. We reverse and remand for further proceedings.

## I. FACTS

In January 2021, the parties entered into a contract for defendant to perform renovations, and build a bedroom addition, for a house plaintiff owned in East Lansing. According to defendant's motion for summary disposition, Ronald May (May) was the sole proprietor of defendant, and had no employees. The original contract provided that plaintiff would pay defendant all its costs, plus a "builder's fee" equaling 25% of those costs. Defendant was responsible for hiring and overseeing all subcontractors. On April 12, 2021, the parties entered into a revised agreement that expanded the scope of the original project and increased defendant's fee to 30% of costs, but otherwise was consistent with the terms of the original contract. Paragraph 15, which was included in both agreements, stated as follows:

> It is understood and agreed by and between the parties that should Ronald D. May, the managing officer and principal of May Builders, Inc. were to become incapacitated or deceased during the term of this contract, or any extensions or renewals hereof, this Agreement shall become null and void and all Builders' rights hereunder terminated with the exception of payment for work completed.

In time, plaintiff alleged that defendant was failing to supervise subcontractors adequately, resulting in unsatisfactory workmanship. Plaintiff and May had discussions over several months regarding the alleged construction defects and May ultimately declined to make repairs. On April 21, 2022, May sent an e-mail to plaintiff explaining that May could not move forward with the work that plaintiff was requesting because it would not be possible to make the concrete floors fully level, and because an expansion of the roof over the porch could not be safely constructed. The e-mail stated that "it appears to me that you are terminating our contract," and asked plaintiff to coordinate with May on the payment of unresolved invoices. The record includes no further correspondence between May and plaintiff. May died on December 23, 2022.

On February 14, 2023, plaintiff filed a complaint for breach of contract, alleging that defendant failed to properly hire, manage, and supervise subcontractors, to the detriment of the construction project. In lieu of filing an answer, defendant moved for summary disposition pursuant to MCR 2.116(C)(7) (release) and (C)(8) (failure to state a claim). Defendant argued that ¶ 15 prevented plaintiff from proceeding on a claim under the contract after May's death because it provided that the contract would become void *ab initio* upon May's death, except for defendant's right to recover for work already performed.

On April 27, 2023, plaintiff filed an amended complaint. Plaintiff alleged that the parties intended for ¶ 15 to cancel their contract prospectively from the date of May's death, not to void it *ab initio*. Plaintiff also added counts of breach of contract implied in fact, breach of contract implied in law, promissory estoppel, and restitution. Defendant responded with a supplemental brief in support of its motion for summary disposition. Defendant's arguments included that plaintiff could not succeed on his equitable claims because the matter was governed under a written contract that constituted the whole agreement between the parties.

Plaintiff responded that his claims were not barred because the express language of ¶ 15 did not include any mention that plaintiff was giving up claims he had against defendant. Plaintiff argued that ¶ 15 did not void the contract *ab initio* because the provision allowing defendant to be paid for work already performed was itself an enforcement mechanism for rights under the contract. Accordingly, plaintiff argued, ¶ 15 only cancelled the contract going forward and did not void the contract from its inception. Alternatively, plaintiff argued that if the contract were void *ab initio*, plaintiff could then properly maintain his equitable claims.

On August 7, 2023, the trial court entered an opinion and order granting summary disposition in favor of defendant under MCR 2.116(C)(8) only, without considering whether summary disposition was also appropriate under MCR 2.116(C)(7). The court first determined that ¶ 15 operated to void and nullify the agreements between the parties on a condition subsequent, i.e., May's death or incapacitation, nullifying all rights except for the defendant's right to compensation of completed work. The court held that the contract was, therefore, voidable and that the death of Ronald May triggered the voiding provision. It noted that, "[a]n agreement declared null and void nullifies rights and obligations for both parties necessarily – the Agreement no longer has legal force or binding effect." (quotation and citation omitted). The court further held that the exception in the present case was the right carved out in ¶ 15, i.e., defendant's right to compensation for work that had already been completed prior to May's death. The court determined that the provision for termination of the contract pertained to the entire contract, not just prospective performance, leaving plaintiff without a viable action for breaches committed

before the contract was voided. The court also determined that plaintiff could not state valid equitable claims against defendant. The court noted that an implied contract cannot be enforced where the parties have made an express contract covering the same subject. Here, the court determined, the parties had a valid contract up until the time that May died. Further, the court reasoned that plaintiff had not cited any case in support of the argument that nullification of a valid written contract allows a party to proceed on equitable theories. This appeal followed.

Plaintiff argues that the trial court erred in dismissing his claim under MCR 2.116(C)(8) on the ground that May's death rendered the parties' contract null and void, thereby extinguishing plaintiff's contractual rights. We agree.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint." *Id*. When deciding a motion under MCR 2.116(C)(8), the motion must be decided on the basis of the pleadings alone.[1] *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). "[T]he court must accept as true all factual allegations contained in the complaint." *Id*. "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *El-Khalil*, 504 Mich at 160.

Contract interpretation presents a question of law subject to de novo review. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003). The language in the contract is given its plain and ordinary meaning. *Id*. However, "where terms having a definite legal meaning are used in a written contract, the parties to the contract are presumed to have intended such terms to have their proper legal meaning, absent a contrary intention appearing in the instrument." *Lewis v Farmers Ins Exch*, 315 Mich App 202, 217; 888 NW2d 916 (2016). "The primary goal of contract interpretation is to honor the parties' intent. When the contract is unambiguous, the parties' intent is gleaned from the actual language used." *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 57; 698 NW2d 900 (2005). "[I]f the language of the contract is unambiguous, we construe and enforce the contract as written." *Coates v Bastian Brothers, Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007). Whether a contractual term is ambiguous presents a question of law. *Id*. "A contract is ambiguous when two provisions irreconcilably conflict with each other or when a term is equally susceptible to more than a single meaning." *Id*. (quotation marks and citation omitted). When a contract's "meaning is obscure and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury, under proper instructions." *Klapp v United Ins Group Agency*, 468 Mich 459, 469; 663 NW2d 447 (2003).

---

[1] We reject plaintiff's claim that the trial court considered evidence beyond the pleadings in deciding this motion under MCR 2.116(C)(8).

## III. BREACH OF CONTRACT

Plaintiff argues that the trial court erred when it granted summary disposition to defendant by determining that the contract was unambiguous and that ¶ 15 left it unenforceable except for defendant's right to be paid for work performed. We agree.

Plaintiff argues the most logical interpretation of ¶ 15 is that the contract would be cancelled, going forward, if May died or became incapacitated; however, plaintiff also argues that, if that interpretation is not clear from the wording of the contract, then at the very least the agreement is ambiguous. Plaintiff further argues the parties did not intend for the term "null and void" in ¶ 15 to carry the legal meaning that the contract would be rendered void *ab initio* upon May's death. Rather, according to plaintiff, the parties intended for ¶ 15 to cancel the contract prospectively from the time of May's death, without extinguishing the existing rights and liabilities of the parties as they existed until then.

Defendant argues that the trial court did not err because ¶ 15 of the agreement operated to void and nullify the agreements between the parties upon the condition subsequent, which was the death of May.

Historically, there has been confusion among courts regarding whether a particular contract is void or if it is voidable. *State Farm Mut Auto Ins Co v Fortin Estate*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363755); slip op at 12. In the most basic terms, "[a] contract that is 'void' never had any legal existence, as opposed to a contract that is 'voidable,' which may be cancelled at the will of one of the parties." *Id*. In *Epps v 4 Quarters Restoration, LLC*, 498 Mich 518, 537; 872 NW2d 412 (2015), the Supreme Court considered in more depth the distinctions between void and voidable contracts. The Court explained that a void contract is "a contract that does not exist at law; a contract having no legal force or binding effect. Such contract creates no legal rights and either party thereto may ignore it at his pleasure, insofar as it is executory." *Id*. (ellipses and alterations omitted). A contract is void when a defect in its formation renders the agreement unenforceable at law. *Id*. at 539.

On the other hand, a voidable contract is "not absolutely void, or void in itself," but "may be legally voided at the option of one of the parties[.]" *Id*. at 538. A voidable contract "can be avoided (cancelled) by one party because a right of rescission exists as a result of some defect or illegality (*e.g.*, fraud or incompetence)." *Id*. A "party with the power of avoidance has the unilateral option to either rescind the contract and avoid the obligation of performance, or to ratify the contract and render it enforceable." *Id*. at 548. When a voidable contract is ratified, both parties may enforce their rights under it. *Id*. at 553 n 32. "When a contract is rescinded, the contract is abrogated from the beginning, and none of its provisions . . . are applicable." *Michelson v Voison*, 254 Mich App 691, 697; 658 NW2d 188 (2003). "Rescission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 409; 919 NW2d 20 (2018). "Unless rescinded, a voidable contract imposes on the parties the same obligations as if it were not voidable." *Id*. (quotation marks, citation, and alteration omitted). If a party chooses to rescind a contract, the party may not be able to recover the full benefit of the bargain. *Epps*, 498 Mich at 546. Under those circumstances, "instead of undoing the transaction," a party "may find it more beneficial to seek damages for . . . breach of contract." *Id*.

-4-

"In contract law, 'cancellation' has acquired a peculiar and appropriate meaning in the law." *Titan Ins Co v Hyten*, 491 Mich 547, 567; 817 NW2d 562 (2012) (footnote omitted). When a contract is cancelled, "it is terminated as of the cancellation date and is effective up to such date[.]" *Id*. (quotation marks and citation omitted). "[C]ancellation applies only prospectively and thus leaves in place all claims that vested before the cancellation." *Meemic Ins Co v Fortson*, 506 Mich 287, 312; 954 NW2d 115 (2020).

"[I]n the context of a summary disposition motion, a trial court may determine the meaning of the contract only when the terms are not ambiguous." *D'Avanzo v Wise & Marsac*, *PC*, 223 Mich App 314, 319; 565 NW2d 915 (1997).

First, we reject the trial court's conclusion that ¶ 15 operated to void and nullify the agreements between the parties on a condition subsequent, i.e., May's death or incapacitation, nullifying all rights except for the defendant's right to compensation of completed work. In fact, there was no condition subsequent here. "[A] 'condition subsequent' is a condition that, if not met by one party, abrogates the other party's obligation to perform." *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 411-412; 646 NW2d 170 (2002). Under ¶ 15, plaintiff had no obligation the nonperformance of which would relieve defendant of its obligation to perform. Rather, ¶ 15 provided that, upon the occurrence of May's incapacitation or death, the rights and obligations of both parties would be affected. Accordingly, the trial court erroneously concluded that the contract contained a condition subsequent.

Second, while we agree with the trial court that the contract was unambiguous, we do so for different reasons. We find that the only reasonable reading of the whole contract is that it would be cancelled (or terminated) upon the death or incapacity of May. As such, the cancellation would apply prospectively, from the date of May's death, leaving in place all claims that vested before the cancellation pursuant to *Fortson*, 506 Mich at 312.

Paragraph 15 clearly was not intended to void the entire contract *ab initio* as it retained the requirement that plaintiff was obligated to compensate defendant for the work that was completed, i.e., it cannot be deemed to be a voided and nullified contract because contractual obligations continued after it was cancelled. When a contract is void, both parties are free to ignore any provision of the purported contract. *Epps*, 498 Mich at 537. As the Supreme Court noted in *Epps*, "[T]he very term 'void contract' is an oxymoron because a contract that is void is not a contract at all." *Id*. at 547. Here, if the contract was void, then there would be no contractual obligation for plaintiff to pay defendant for work completed because there would be no contract. It is clear that the parties intended that May's death would relieve them of any prospective performance under the contract. Although the parties have not offered full explanations of what rights defendant would give up upon May's death under their respective interpretations of the contract, the parties seem to agree that the main right defendant gave up would be to claim any lost profit resulting from plaintiff's hiring another contractor to complete the project. Because both parties would at least be relieved of any future obligations to one another after May's death, the contract could be deemed cancelled, but not voided.

The contract cannot likewise be deemed to be voidable because this is not a situation in which the contract could be legally voided at the option of one of the parties. See *Epps*, 498 Mich at 538. Here, the cancellation of the contract was not an option that either party was required to

exercise; rather, as soon as May died, the contract was cancelled. If the contract here had been voidable, and if defendant had the power to rescind the contract, then defendant would have been required to either rescind the contract or ratify it pursuant to *Epps*, 498 Mich at 538, and *Michelson*, 254 Mich App at 697. If defendant had rescinded a voidable contract, then none of its provisions would have been applicable, including the requirement that plaintiff compensate defendant for completed work. Had defendant ratified a voidable contract, then all provisions would still be in place. Thus, the trial court erred when it held that the contract was voidable.

The trial court's holding, that plaintiff could no longer pursue claims that vested before the death of May, also ignores the last phrase of ¶ 15, which says, ". . . and all Builders' rights hereunder terminated with the exception of payment for work completed." The parties clearly drafted the contract to indicate that all of defendant's rights were terminated upon the death of May (except for the right to be paid for completed work). As plaintiff has argued, had the parties intended to likewise terminate all of the rights of plaintiff upon the death of May, such a phrase would likewise appear in ¶ 15 – but such a phrase does not appear in the paragraph.

To be clear, the cancellation was only prospective and left in place any legal claims that might have accrued before the cancellation. See *Fortson*, 506 Mich at 312. The contract thus preserved plaintiff's rights regarding the quality of defendant's work, up to the time of the death of May. Paragraph 14 of the contract stated, in pertinent part, as follows:

> Builder shall be wholly responsible for the carrying out of this work and the delivery of the finished work in its entirety for the final acceptance by the Owner. Any payment or payments made to Builder shall not be construed as operating to relieve the Builder from responsibility for the carrying out and delivery of said Work.

Thus, plaintiff maintained the right to challenge whether the project was completed to specifications, even in connection with work for which plaintiff had already paid. Also, ¶ 10 of the contract provided an 18-month warranty for defects in materials and workmanship. Accordingly, the contract provided plaintiff with rights that had vested in relation to work that was already performed.

Moreover, the plain language of the contract did not suggest that plaintiff waived his right to enforce the contract after May's death. Waiver is an "intentional and voluntary relinquishment of a known right." *Moore v First Security Cas Co*, 224 Mich App 370, 376; 568 NW2d 841 (1997). "An affirmative expression of assent constitutes a waiver." *Nexteer Auto Corp v Mando America Corp*, 314 Mich App 391, 395; 886 NW2d 906 (2016). "To waive a right, the language of a stipulation must show an intent to plainly relinquish that right." *Id*. at 395-396. Paragraph 15 does not contain any language expressly indicating that plaintiff intended to relinquish a right to enforce the terms of the contract for work performed before May's death. Again, the language refers to only the "termination" of defendant's rights under the contract other than the right to be paid for

completed work.[2]   There is simply no mention of plaintiff's rights.   In the absence of any expression of a relinquishment of plaintiff's rights, it cannot reasonably be concluded that plaintiff waived any right to enforce the contract if May died.

In summation, pursuant to *Lewis*, 315 Mich App at 217, because a contrary meaning appears in the contract, we must presume that the term "null and void" was not intended to be given its technical legal meaning, and instead was meant to be synonymous with "cancel." Interpreting the phrase "null and void" as having its technical legal meaning would create an ambiguity in the contract because it would irreconcilably conflict with the phrase, "with the exception of payment for work completed." See *Coates*, 276 Mich App at 503.  If the contract is void, then it does not exist at law, meaning it has no legal force or binding effect. *Epps*, 498 Mich at 537.  Thus, the phrase "null and void" could not be read in concert with the phrase, "with the exception of payment for work completed," because plaintiff could not be contractually obligated to pay defendant for work completed if the contract did not exist.  But "courts cannot simply ignore portions of a contract in order to avoid a finding of ambiguity or in order to declare an ambiguity. Instead, contracts must be construed so as to give effect to every word or phrase as far as practicable." *Klapp*, 468 Mich at 467 (quotation marks and citation omitted).  When the subject contract is read as a whole, reading the phrase "null and void" to mean "cancel" harmonizes it with the phrase "with the exception of payment for work completed," which was clearly the intention of the drafters based upon the rest of the document.

We therefore conclude that the trial court erred when it granted defendant summary disposition of plaintiff's breach-of-contract claim.

## IV.  EQUITABLE CLAIMS

Plaintiff also argues that the trial court erred when it granted summary disposition in favor of defendant on plaintiff's equitable claims; however, we need not address that issue as we have determined that the trial court erred when it dismissed plaintiff's claims for breach of contract. "As a general rule, an appellate court will not decide moot issues." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).

---

[2] In order to avoid confusion, we note that under Michigan law there can be a difference between termination of a contract and cancellation of a contract, such as a case involving a sale of goods governed by the Uniform Commercial Code (UCC), but this is not such a case.  MCL 440.2106(3), which is a provision of Article 1, § 2, of the UCC says: " 'Termination' occurs when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach.  On 'termination' all obligations which are still executory on both sides are discharged but any right based on prior breach or performance survives."  In contrast, MCL 440.2106(4) says: " 'Cancellation' occurs when either party puts an end to the contract for breach by the other and its effect is the same as that of 'termination' except that the cancelling party also retains any remedy for breach of the whole contract or any unperformed balance."  However, the present case is not governed by the UCC as it involves a contract for services, not a contract for a sale of goods. So, in present case, we use the terms "termination" and "cancellation" interchangeably.

Reversed and remanded for further proceedings not inconsistent with this opinion.  We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Allie Greenleaf Maldonado
/s/ Randy J. Wallace