RATHBUN *v.* HERCHE.

1. VENDOR AND PURCHASER—ASSIGNABILITY OF LAND CONTRACT.
    While provision giving vendor control of assignability of land
    contract for sale of office building might be properly included
    it is not essential to validity of the contract.

2. SAME—SPECIFIC PERFORMANCE—ASSIGNABILITY.
    Where agreement as to sale of office building embodies all the
    parties, accurately describes the property, provides for mar-
    ketable title, fixes contract price, amount and time of instal-
    ment payments, rate of interest on unpaid sums and the adjust-
    ment of taxes and assessments, and by inference provides for
    the right of possession in the vendee, vendor may not avoid
    specific performance for refusal of vendee to give a form of
    contract giving vendor control of assignability of the contract
    where no reference thereto was made until after the agreement
    was executed, as the agreement was complete and may not be
    varied by oral evidence.

3. SAME—PERMISSIBLE PROVISIONS—SPECIFIC PERFORMANCE.
    While provisions as to defeasance, insurance, repairs, and
    payment of taxes may properly be included in a land contract,
    they are not essential to its validity or to a decree for
    specific performance thereof, where the agreement is definite
    as to parties, property, consideration, terms and time of per-
    formance.

4. SAME—CONSTRUCTION OF LAND CONTRACT—ORAL EVIDENCE.
    No oral evidence is admissible to vary the terms of a written
    land contract that is unambiguous and complete and requires
    no extraneous evidence to explain its meaning.

5. SPECIFIC PERFORMANCE—LAND CONTRACT—PRELIMINARY AGREE-
    MENTS.
    Courts have power to decree specific performance of preliminary
    agreements which contemplate execution of formal land
    contracts.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 55 Am. Jur., Vendor and Purchaser, §§ 420, 432 *et seq.*
[4] 55 Am. Jur., Vendor and Purchaser, § 98.
[7] 49 Am. Jur., Specific Performance, § 43.
[7] Provision in land contract for pecuniary forfeiture of penalty
    by a party in default as affecting the right of the other party
    to specific performance. 32 A.L.R. 584; 98 A.L.R. 887.
[8] 49 Am. Jur., Specific Performance, § 143.

6. VENDOR AND PURCHASER — PRELIMINARY AGREEMENT — FORMAL
   LAND CONTRACT—DEPOSITS.
   Where preliminary agreement, although constituting a complete
   contract by itself, contemplated execution of a formal land
   contract, and provided for payment of an additional deposit
   within a set time and such additional deposit was made and
   accepted, the contract then became a binding one, if not such
   from inception.

7. SPECIFIC PERFORMANCE—STIPULATED DAMAGES.
   A stipulation in regard to liquidated damages does not preclude
   a suit for specific performance unless it appears from the
   whole contract that it was the intention of the parties that the
   right to pay the stipulated sum or perform the contract should
   be optional.

8. SAME—LAND CONTRACT—PERFORMANCE—TENDER.
   Where purchaser has paid or tendered performance of every-
   thing required of him under a valid land contract, he is en-
   titled to specific performance thereof.

9. APPEAL AND ERROR—SPECIFIC PERFORMANCE—REMAND.
   Where defendant vendor had given a bond and continued in
   possession of income-producing property during pendency of
   purchaser's suit for specific performance, upon decree for plain-
   tiff the case is remanded for further proceedings as may be
   deemed fit and proper that are not inconsistent with action
   of Supreme Court.

Appeal from Kent; Verdier (Leonard D.), J. Sub-
mitted October 5, 1948. (Docket No. 68, Calendar
No. 44,201.) Decided December 17, 1948.

Bill by Milo D. Rathbun against Marshall F.
Herche for specific performance of a written con-
tract for sale of land. Decree for plaintiff. Defend-
ant appeals. Affirmed.

*Alexander, Cholette, Buchanan, Perkins & Conklin,*
for plaintiff.

*Searl, White & Brooks,* for defendant.

NORTH, J. In this suit for specific performance of a preliminary agreement for the contract purchase of a seven-story office building in Grand Rapids, plaintiff, Milo D. Rathbun, prevailed and defendant, Marshall F. Herche, has appealed. The preliminary agreement as finally signed by the parties reads:

"I agree to purchase, through H. F. Deeb and M. G. Deeb, from Marshall F. Herche, the property known as the Ashton Building, lot 3, section 17, plat village of Grand Rapids, Campau plat, Kent county, Michigan, 74–78 Ionia ave., N. E., Grand Rapids, Michigan, for the sum of $140,000, the terms as follows: $40,000 down at the time of closing of deal, balance on land contract with monthly payments thereafter of $1,000 including interest at the rate of $3\frac{1}{2}$ per cent. computed monthly.

"This offer is subject to complete abstract showing marketable title certified to date and tax histories being furnished by the seller. Taxes and assessments payable if the offer is accepted, are to be assumed by the seller, except the 1947 summer tax and the 1946 winter tax are to be prorated between the buyers and seller as of the date of consummation of the transaction. Also agree to purchase the property as it is.

"I deposit with this offer $1,500 as earnest money which will apply on the purchase price if this offer is accepted, but if this offer is not accepted on or before May 6, 1947, the deposit of $1,500 is to be returned to me.

"If for any reason the purchaser is unable to consummate this transaction on or before June 30, 1947, through no fault of seller, then purchaser shall forfeit said $1,500 to seller and said sum shall be considered as seller's liquidated damages in full.

"The above sum received as a seven-day option to buy. If deal is binding, a larger deposit to be made May 15th of $3,500.

s/ MILO D. RATHBUN,<br>Buyer.

"The above proposition is hereby accepted.  I also agree to pay broker the customary 5 per cent. commission on gross selling price.

s/ MARSHALL F. HERCHE,<br>
Seller.

"A further consideration of the above agreement is as follows:

"In re:   the lease on the north store which is occupied by the Richter music company and a condition of this lease being that Richter is to pay to the owner of the building 5 per cent. on all sales over $30,000, it is mutually agreed by buyer and seller that Marshall F. Herche is to receive all the earned commissions on this lease up to the time this property is sold.

"A further condition of this agreement is as follows:  Marshall F. Herche is to retain all supplies and tools as his own unless the buyer should elect to inventory same and purchase them outright.

Buyer   s/ MILO D. RATHBUN<br>
Seller   s/ MARSHALL F. HERCHE"

Hereinafter we refer to the above preliminary agreement as exhibit 1.  Within the time limitation plaintiff paid defendant the required $5,000 and tendered payment of an additional $35,000, thereby making or tendering the required $40,000 down payment due "at the time of closing of deal."  Plaintiff also timely submitted to defendant for execution a contract which, with one exception about to be noted, was wholly satisfactory to defendant; but defendant refused to execute the contract within the time limitation provided in exhibit 1, and immediately after expiration of the provided time defendant notified plaintiff that "it was no deal."

Within the period provided in exhibit 1, these litigants, through their respective attorneys, made numerous efforts to agree upon the specific provisions to be contained in the land contract required by exhibit 1.  Incident to these efforts to agree upon the form of the contract, use was made of the so-called

Grand Rapids real estate board form of land contract, paragraph 8 of which contained rather strict provisions as to the purchaser's right to assign, sublet, et cetera. Finally in the negotiations incident to agreeing upon the terms of the contract all differences were obviated with the exception of the leasing or subletting and building alteration provisions, and such a contract was tendered by plaintiff to defendant for the latter's execution. The paragraph 8 providing for nonassignability, restricting transfer of the vendee's interest, subletting, et cetera, in the Grand Rapids real estate board form of land contract reads as follows:

"8. The purchaser's character and responsibility being valuable to the seller the purchaser shall not assign or transfer this contract, lease or sublet said premises, or the buildings thereon, or any part thereof, or add to or change said buildings, without the previous written assent of the seller thereto indorsed thereon."

The contract which plaintiff finally signed and submitted to defendant for execution contained as paragraph 8 in lieu of the above quoted paragraph 8, the following provision:

"8. The purchaser's character and responsibility being valuable to the seller, the purchaser shall not assign or transfer the contract."

The record convincingly discloses that the only reason assigned by defendant for his refusal to execute the contract finally tendered by plaintiff was that defendant was not willing to accept the provisions of paragraph 8 in the contract tendered to him for execution. Instead defendant insisted upon there being embodied in the contract paragraph 8 as quoted above from the Grand Rapids real estate board form. Concerning the acceptability of the

contract tendered by plaintiff to defendant Herche, the latter testified:

"*Q.* In other words, you would have been satisfied to accept tender if Dr. Rathbun had given you the Grand Rapids real estate form with all the provisions?

"*A.* That is right. My attorneys were instructed to accept it. The only objection I had then to the land contract which was submitted to me was because paragraph 8 was out. *In all other respects, the contract submitted was entirely agreeable and acceptable to me.*"

In consequence of the foregoing it is obvious that decision in the instant case turns upon the sole question as to whether defendant was entitled to have in the contract between these parties the above quoted paragraph 8 as embodied in the Grand Rapids real estate board contract. This question must be answered in the negative for the following reasons.

Exhibit 1, as signed by the respective parties, embodies all the terms essential to a valid land contract. It names the parties, accurately describes the property, provides for marketable title, fixes the contract price, the amount and time of instalment payments, the rate of interest on unpaid sums, and the adjustment of taxes and assessments. And by plain inference it provides right of possession in the vendee. Such a contract would be a complete and valid contract notwithstanding it contained no provision as to repairs, insurance, or right of the purchaser to assign his interest.

"While provisions as to defeasance, insurance, repairs, and payment of taxes might properly have been included, they are not essential to the validity, or decree for specific performance, of a land contract, where said agreement is definite as to parties, property, consideration, terms and time of per-

formance." *Milner Hotels, Inc.,* v. *Ehrman* (syllabus), 307 Mich. 347.

No reference was made by these parties to the Grand Rapids real estate board contract form, or to any other particular form of land contract, until after they had executed exhibit 1. Defendant's demand that the contract include paragraph 8 of the Grand Rapids real estate board form was an afterthought; and thereby defendant demanded material contract provisions not included in exhibit 1. Defendant had no right to do so because he was thereby demanding a change in and an addition to the terms of exhibit 1. This demand of additional limitations on the purchaser's rights in the instant case was of rather unusual consequence. The purchased property was a 7-story office building; and in consequence it taxes credulity to infer that when these parties executed exhibit 1 either of them had any thought that the purchaser would accept a contract which provided he could not "lease or sublet * * * any part thereof * * * without the previous written assent of the seller." In the instant case it can be said as in *Miller* v. *Smith,* 140 Mich. 524:

"The suit was brought upon the written agreement signed by defendants, above set forth. The writing is unambiguous and complete, and requires no extraneous evidence to explain its meaning. It is fundamental that no oral evidence to change or vary its terms would be admissible. * * * It was a valid contract for the sale of land."

The following from *Smith* v. *Mathis,* 174 Mich. 262, 270, is also pertinent to the case at bar:

"In the instant case the memorandum of the agreement was clearly within the terms of the statute of frauds * * * and was required to be in writing. We shall cite cases upon the next point to be considered, to the effect that, where the vendee has accept-

ed such a memorandum, it must, in the absence of fraud, be taken as conclusive, not subject to variation by parol evidence, and, if it contains all of the requisites of a valid land contract, it is binding on both parties."

That courts have the power to decree specific performance of preliminary agreements which contemplate execution of formal land contracts, and under appropriate conditions will do so, see *Brin* v. *Michalski,* 188 Mich. 400, and *Ogooshevitz* v. *Arnold,* 197 Mich. 203.

We are not in accord with defendant's contention that exhibit 1 is not a contract but instead is only an option held by plaintiff, and as such was not a mutually binding agreement, did not afford mutuality of remedies, and, hence, should not be specifically performed by the courts. Exhibit 1 is a contract in which plaintiff said: "I agree to purchase;" the defendant indorsed thereon: "The above proposition is hereby accepted." We do not overlook that defendant inserted in exhibit 1: "The above sum ($1,500) received as a seven-day option to buy. If deal is binding, a larger deposit to be made May 15th of $3,500." Plaintiff timely paid defendant the additional sum of $3,500 and thereupon exhibit 1 became a binding contract, even if it can be questioned that it was not such from its inception.

We are not unmindful that exhibit 1 provides if "the purchaser is unable to consummate this transaction on or before June 30, 1947," he shall forfeit his deposit of $1,500 as "liquidated damages in full;" but in *Milner Hotels, Inc.,* v. *Ehrman, supra,* p. 356, we said:

"A stipulation in regard to liquidated damages does not preclude a suit for specific performance unless it appears from the whole contract that it was the intention of the parties that the right to pay the

stipulated sum or perform the contract should be optional."

To the same effect see *Randall* v. *Douglass,* 321 Mich. 492, and *Franko* v. *Olszewski,* 316 Mich. 485. Our conclusion that upon plaintiff's payment to defendant of the additional sum of $3,500 exhibit 1 became a binding contract is further fortified by the fact that under date of May 12, 1947, defendant gave to plaintiff the following receipt:

"Received of Milo D. Rathbun the sum of $3,500 the balance of the full down-payment of $5,000 on his offer to purchase the Ashton building, Grand Rapids, Michigan, which I accepted on May 5, 1947, which is hereby reaffirmed.

MARSHALL F. HERCHE"

Nor can we accept defendant's contention that this controversy is controlled by various decisions cited in his brief. For example, *Lippman* v. *Featherston,* 247 Mich. 153, is not in point because, as stated in the opinion in that case: "The contract at bar was not certain and definite of itself, (and) has not been made so by extrinsic evidence." In the cited case, unlike the instant case, the preliminary agreement did not contain all of the terms and conditions essential to a valid land contract; and under such circumstances it was held: "The court cannot make a contract by selecting a form (of contract) for them."

The record before us discloses that within the time limit specified in exhibit 1 (June 30, 1947) plaintiff performed or tendered performance of everything required of him by exhibit 1. In consequence he was and is entitled to specific performance. The trial court so decreed. The decree entered in the circuit court is affirmed, but since under a stay order entered by the trial court, defendant upon giving bond has continued in possession of this income-producing property, the case is remanded to the trial court for

such further proceedings herein as may be deemed fit and proper and for modification of its former decree accordingly, but n●t inconsistent with our holding herein. Plaintiff may have costs.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, DETHMERS, BUTZEL, and CARR, JJ., concurred.