*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMER FASO,

Plaintiff-Appellant,

v

THOMAS E. MEYER, KATHLEEN D. MEYER,
and COMMUNITY FIRST TITLE AGENCY, LLC,

Defendants-Appellees.

UNPUBLISHED
March 21, 2024

No. 365279
Tuscola Circuit Court
LC No. 20-031318-CH

Before: FEENEY, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Plaintiff appeals as of right the order granting summary disposition to defendants, Thomas E. Meyer, Kathleen D. Meyer, and Community First Title Agency, LLC ("defendants" jointly), under MCR 2.116(C)(10) (no genuine issue of material fact), on plaintiff's claim for specific performance of a land contract.[1] We affirm the trial court's order as to the interpretation of provisions of the sales contract, but reverse regarding specific performance on the separate land contract absent a commitment of title from defendants, and remand for further proceedings.

## I. BACKGROUND

This case has come before this Court before in *Faso v Meyer*, unpublished per curiam opinion of the Court of Appeals, issued August 4, 2022 (Docket No. 358572), when plaintiff appealed the trial court's grant of defendants' first motion for summary disposition. A factual reiteration of the case from this Court's opinion in the prior appeal is provided for context:

> This case arises out of a dispute over the sale of land located at 2304 W. Sanilac Road in Caro, Michigan (the property) owned by defendants, Thomas Meyer and Kathleen Meyer (defendants). On September 14, 2020, defendants and plaintiff

---

[1] Defendant, Community First Title Agency, LLC, is not participating in the appeal, so "defendants" refers only to Thomas E. Meyer and Kathleen D. Meyer.

executed a sales contract for the sale and purchase of the property for $90,000. Under the terms of the sales contract, plaintiff deposited $5,000 with defendant, Community First Title Agency, LLC. The parties all signed the sales contract.

On October 9, 2020, plaintiff filed a complaint requesting specific performance of the sales contract, alleging defendants had refused to sell the property and failed to provide the title commitment requirement by the sales contract. Defendants moved the trial court for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10), arguing that the sales contract "failed to reflect a meeting of the minds as to all the central terms of a transaction for conveyance of a commercial building and associated real property." The trial court concluded:

> "The Court's understanding of basically what happened here, there was a . . . form purchase agreement entered into that basically was an agreement to enter into a land contract. Now, there were payment terms, but that was about the extent of . . . the specifics in the sales contract.
>
> "And so, an agreement to enter into an agreement is not necessarily under Michigan law something that can be specifically enforced. And so, the Court will grant summary disposition pursuant to MCR 2.116(C)(8). And the Court finds that there was no meeting of the minds. So, as far as . . . any material . . . issue of material fact as to the agreement, there was no agreement. So, the Court grants [summary disposition] as to [(C)(10)] as well."

[*Faso*, unpub op at 1-2 (footnote omitted).]

This Court reversed the trial court's order, reasoning the sales contract between the parties is essentially a contract to create a land contract, and is valid and enforceable because it contains all the essential terms for a valid land contract, and the parties agreed on all essential terms. *Faso*, unpub op at 1-5.[2] This Court also found, because paragraph four of the sales contract only requires a commitment for title insurance if plaintiff waives all other contingencies, and because there was no evidence plaintiff waived all other contingencies, defendants were not yet required to apply for a commitment of title insurance, and were not in breach of the sales contract. Plaintiff also requested specific performance on the sales contract under MCR 2.116(I)(2) because it was valid and enforceable. Plaintiff's failure to adequately brief this argument resulted in abandonment of the issue on appeal. This Court granted specific performance for the sale of the property in its "as

---

[2] Michigan courts have recognized a valid land contract must include the following essential terms: (1) name of the parties; (2) accurate description of the property; (3) provides for marketable title; (4) fixed contract price; (5) the amount and time of installment payments, (6) the interest rate, (7) the adjustment of taxes and assessments, and (8), "by plain inference it provides right of possession in the vendee." *Zurcher v Herveat*, 238 Mich App 267, 285-287; 605 NW2d 329 (1999), quoting *Rathbun v Herche*, 323 Mich 160, 165; 35 NW2d 230 (1948).

is" condition to plaintiff, and the case was remanded to the trial court for further proceedings to determine whether plaintiff is entitled to summary disposition under MCR 2.116(I)(2) on the issue of the sales contract's specific performance. *Faso*, unpub op at 6.

On remand, defendants tendered a land contract to plaintiff which provided plaintiff was to buy the property "as is." The land contract contained the same provisions as the sales contract, and provided, at paragraph 13, plaintiff would receive title insurance and clear title to the property from defendants. Specifically:

> Buyer's Acceptance of Title. *Buyer acknowledges examining a commitment for title insurance covering the Premises*, dated ____, 2022, by Community First Title Agency ("Title Company"), Commitment Number ____ and agrees to accept as merchantable the title therein disclosed. Seller shall deliver to Buyer as evidence of title an owner's policy of title with standard exceptions insuring Buyer, the effective date of the policy to be the date of this Contract, and issued by Title Company.

Plaintiff rejected the land contract, disputing the provisions about title insurance, and asserting defendants originally agreed to remove tangible personal property remaining on the premises. Plaintiff alleged he agreed defendants would be subject to a monetary penalty for failing to remove certain tangible personal property from the premises. Defendants denied such an agreement.

Defendants again moved for summary disposition under MCR 2.116(C)(10), arguing plaintiff's refusal of the land contract, which they alleged was consistent with this Court's opinion, waived plaintiff's claim for specific performance and the transaction should be terminated. Defendants attached an affidavit of Thomas E. Meyer attesting he never agreed to removal of all tangible property from the real property. Plaintiff responded, arguing he did not sign the land contract because defendant did not deliver a title commitment as the sales contract required, and because defendants were required to remove all personal property not referenced in paragraph one of the sales contract. Plaintiff also attached an affidavit, the contents of which directly conflicted with Thomas E. Meyers's affidavit, stating plaintiff agreed with defendants they would remove personal property not listed in paragraph one of the sales contract.

On January 30, 2023, on remand, the trial court decided plaintiff's previous motion for summary disposition under MCR 2.116(I)(2). The trial court granted specific performance, ordering plaintiff to agree to and execute the land contract defendants tendered within 14 days from the entry of the order. Plaintiff's failure to execute the land contract on time resulted in the trial court's grant of summary disposition to defendants on February 23, 2023, for reasons set forth in the January 30, 2023 order, which deemed the sales contract terminated and closed the case. This appeal followed.

## II. ANALYSIS

We review de novo the trial court's decision to grant or deny summary disposition. *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020). A motion for summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of plaintiff's claim, is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment

as a matter of law. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree." *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation marks and citation omitted). When reviewing the trial court's decision to grant or deny summary disposition under MCR 2.116(C)(10), this Court considers the parties' documentary evidence in the light most favorable to the party opposing the motion. *Johnson*, 502 Mich at 761. "[R]eview is limited to the evidence that had been presented to the circuit court at the time the motion was decided." *Innovative Adult Foster Care*, *Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009).

The moving party may satisfy its burden under MCR 2.116(C)(10) by "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim," *or* by "demonstrat[ing] to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). After the movant has satisfied their burden, the nonmovant's burden to avoid summary disposition is to "go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id*. at 363. If the nonmovant fails to do so, then the motion is properly granted. *Id*. "Questions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008) (citation omitted).

Finally, "[a] circuit court properly grants summary disposition to the opposing party under MCR 2.116(I)(2) if the court determines that the opposing party, rather than the moving party, is entitled to judgment as a matter of law." *Connell v Lima Township*, 336 Mich App 263, 281; 970 NW2d 354 (2021) (citation omitted). Plaintiff contends the trial court erred in granting summary disposition to defendants. There are three distinct legal issues raised on appeal, which we address separately.

## A. INTERPRETATION OF SALES CONTRACT

The resolution of the issues involves interpretation of the language in the sales contract, which this Court determined was valid and enforceable. *Faso*, unpub op at 5-6. In interpreting a contract, this Court's "obligation [is] to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning." *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754, 758 (2008), citing *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 112; 595 NW2d 832 (1999). "The initial question whether contract language is ambiguous is a question of law." *Port Huron Educ Ass'n MEA/NEA v Port Huron Area Sch Dist*, 452 Mich 309, 323; 550 NW2d 228 (1996). A contract is ambiguous "if it is equally susceptible to more than a single meaning," and "a finding of ambiguity is to be reached only after all other conventional means of interpretation have been applied and found wanting." *Kendzierski v Macomb County*, 503 Mich 296, 311; 931 NW2d 604 (2019) (quotation marks omitted).

Extrinsic evidence can be presented to determine the intent of the parties when the contractual language is ambiguous. *In re Smith Trust*, 480 Mich at 24. However, this Court must not create ambiguity where the terms of the contract are clear. *Auto Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992). When a contract's language is unambiguous, we

"must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *In re Smith Trust*, 480 Mich at 24.

## 1. REMOVAL OF PERSONAL PROPERTY

The trial court did not err in finding there is no genuine dispute of material fact that the sales contract required plaintiff to take the property "as is," which meant defendants had no obligation to remove personal property from the premises before title passed to plaintiff.

Plaintiff argues the trial court erred because the requirement for plaintiff to retain all personal property on the real estate was not included in the original sales contract. This Court has explained the valid purpose and conditions under which "as is" clauses operate in real estate transactions:

> "As is" clauses allocate the risk of loss arising from conditions unknown to the parties . . . [and] also transfer the risk of loss where the defect should have reasonably been discovered upon inspection, but was not. They do not, however, transfer the risk of loss where a seller makes fraudulent representations before a purchaser signs a binding agreement. [*Lorenzo v Noel*, 206 Mich App 682, 687; 522 NW2d 724 (1994) (citations omitted).]

Plaintiff does not allege fraud in defendants leaving personal property on the premises, but instead asserts the definition of "property" in the sales contract can reasonably be interpreted in more than one way. In any event, when the sales contract contains an "as is" clause, it must have been reasonable to expect the buyer, here plaintiff, to discover a defect on inspection of the property for the "as is" clause to protect the seller, defendants, from a claim of fraud. *Coosard v Tarrant*, 342 Mich App 620, 638; 995 NW2d 877 (2022).

Paragraph 13 of the sales contract states:

> Buyer has personally inspected the property and accepts it in its AS IS present condition and agrees that there are no additional written or oral understandings except as otherwise provided in this contract.

Because the personal property left on the premises, which plaintiff initially toured on September 1, 2020, before signing the sales contract, would have been difficult to miss, it is reasonable to expect plaintiff would have discovered the personal property and addressed its disposition with defendants. In the absence of any conflicting warranty provisions, the "as is" provision in paragraph 13 is not reasonably susceptible to more than one interpretation. It must be interpreted in accordance with its plain and ordinary meaning that plaintiff takes the property as he sees it. Defendants are not obligated to remove remaining personal property from the premises before closing, and are not subject to a penalty for failing to do so. This conclusion is supported by this Court's remand order deeming the transaction as an "as is" land contract transaction. *Faso*, unpub op at 5. See *Rott v Rott*, 508 Mich 274, 287; 972 NW2d 789 (2021) (quotation marks, citation, and emphasis omitted) ("the law-of-the-case doctrine merely expresses the practice of the courts generally to refuse to reopen what has been decided . . . .").

Plaintiff argues the added written term "seller to remove items by 10-14-20" in paragraph nine of the sales contract meant defendants would remove all items not referenced in paragraph one of the sales contract. This is negated by the fact defendants left empty the area where the form contract provided space to delineate exclusions to what items are included in the sale of the real estate. Reasonable minds could not differ in concluding from the unambiguous language of the contract as written that if defendants meant for the personal property to be excluded from the sale, they would have identified any personal property excluded from paragraph one in the space provided. *In re Smith Trust*, 480 Mich at 24.

It is also worth noting plaintiff's affidavit proffered to show he agreed with defendants to have personal property removed is parol evidence precluded from consideration because the sales contract, in paragraph 13, contains an integration clause. Such evidence cannot be used to create a genuine dispute of material fact necessitating remand. An integration clause is an internal rule of construction that any previous or contemporaneous agreements between the parties are nullified. *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 507 n 14; 579 NW2d 411 (1998). Its principal purpose "is to prohibit consideration of parol evidence by nullifying agreements not included in the written agreement." *Id*.

The language in paragraph 13 of the sales contract stating "Buyer . . . agrees that there are no additional written or oral understandings except as otherwise provided in the contract" is an integration clause pertaining to the "as is" provision. Although plaintiff's affidavit does not state whether the agreement for defendants to remove personal property before closing was made prior to or contemporaneous with the signing of the sales contract, it appears plaintiff contemplated this agreement along with signing the sales contract because of his interpretation of the contract's provisions. The integration clause in paragraph 13 pertaining to the "as is" provision precludes this Court from considering plaintiff's affidavit that he agreed with defendants to have personal property removed. Accordingly, we affirm, in part, the February 23, 2023 order granting summary disposition in favor of defendants on this basis.

## 2. WHETHER PLAINTIFF WAIVED CONTINGENCIES IN THE SALES CONTRACT TRIGGERING APPLICATION FOR TITLE COMMITMENT

The trial court did not err in finding there is no genuine dispute of material fact that plaintiff waived all contingencies in the sales contract.

Plaintiff argues he waived all contingencies in the sales contract, while defendants assert plaintiff's demand for removal of personal property and for additional documents not mentioned in the sales contract were unwaived contingencies. The trial court decided in its January 30, 2023 order that plaintiff waived all other contingencies contained in the sales contract, reasoning the "as is" provision was the only contingency left in the sales contract, which the trial court resolved by not requiring defendants to remove any personal property.

The requirement of plaintiff to waive all contingencies is a condition precedent to defendants applying for a commitment of title insurance. A condition precedent "is a fact or event that the parties intend must take place before there is a right to performance." *Reed v Citizens Ins Co of America*, 198 Mich App 443, 447; 499 NW2d 22 (1993), overruled in part on other grounds by *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521; 697 NW2d 895 (2005). A condition

-6-

precedent is different from a promise because it is merely a limiting or modifying factor, and creates no right or duty in itself. *Id.* "Courts are not inclined to construe stipulations of a contract as conditions precedent unless compelled by the language of the contract." *Id.* "[U]nless the contract language itself makes clear that the parties intended a term to be a condition precedent, this Court will not read such a requirement into the contract." *Real Estate One v Heller*, 272 Mich App 174, 179; 724 NW2d 738 (2006).

Paragraph four of the sales contract states:

Seller shall provide to the Buyer, at Seller's expense, an owner's policy of title insurance with standard exceptions in the amount of the sales price. Seller will apply for a commitment for title insurance within 7 days *after the Buyer has waived all other contingencies in this Agreement*. [Emphasis added.]

Because a waiver of all other contingencies must occur *before* defendants are required to apply for a commitment of title insurance, the waiver of contingencies is a condition precedent. The contract's plain language states the waiver of contingencies is further limited to contingencies contained in the sales contract. Defendants were correct to assert plaintiff could not reject the land contract by asserting other terms, which the parties never agreed on, because the contingencies plaintiff must waive are limited to those in the sales contract. Necessarily, plaintiff's request that other documents not mentioned in the sales contract be delivered before closing are not contingencies that need to be waived to trigger defendants' duty to apply for a title insurance commitment. Absent evidence of any unwaived contingencies, the trial court did not err in finding plaintiff waived all other contingencies contained in the sales contract.

## B. SPECIFIC PERFORMANCE ON LAND CONTRACT

The trial court erred in granting specific performance on the land contract before defendants applied for a title commitment as required by paragraph four of the sales contract.

Plaintiff argues the trial court's February 23, 2023 order of specific performance on the sales contract was improper because defendants did not deliver a title commitment, so the time for plaintiff to close had not yet commenced when defendants moved a second time for summary disposition. Plaintiff asserts defendants' obligation to deliver a title commitment had been in place since this Court's opinion in *Faso*, *supra*, was issued. Again, paragraph four of the sales contract states:

Seller shall provide to the Buyer, at Seller's expense, an owner's policy of title insurance with standard exceptions in the amount of the sales price. Seller will apply for *a commitment for title insurance within 7 days after the Buyer has waived all other contingencies* in this Agreement. [Emphasis added.]

This Court held in *Faso*, unpub op at 6, because paragraph four of the sales contract only discusses defendants providing a title commitment to plaintiff in the context of plaintiff waiving all other contingencies in the sales contract, and because there was no evidence plaintiff waived all other contingencies, defendants had not yet failed to provide a policy of title insurance. Because the trial court correctly resolved plaintiff's argument regarding the "as is" condition in the contract, defendants' assertion, in their second motion for summary disposition, that the "as is" term in

paragraph 13 of the sales contract continues to be an unwaived contingency is moot and provides a basis to order specific performance on the land contract.

Again, the trial court decided, in its January 30, 2023 order, that because plaintiff waived all other contingencies contained in the sales contract, plaintiff must perform on the land contract. However, for the trial court to properly order specific performance on the land contract, it would have needed proof defendants provided plaintiff a commitment for title insurance. This is because paragraph four of the sales contract stated defendants must apply for a commitment of title insurance within seven days of plaintiff waiving all contingencies. If plaintiff were to sign the land contract, he would be acknowledging under paragraph 13 of the land contract he already examined a commitment for title insurance covering the premises because the paragraph states: "[B]uyer acknowledges examining a commitment for title insurance covering the Premises, dated ___, 2022, by Community First Title Agency ("Title Company"), Commitment Number ___ and agrees to accept as merchantable the title therein disclosed." It is not enough that paragraph 13 of the land contract contemplates a commitment of title insurance to be delivered sometime in the future. The plain language of the land contract, when read with the sales contract, clearly establishes plaintiff must receive a commitment of title insurance before being required to sign the land contract.

According to plaintiff, a commitment for title insurance had not been delivered when defendants filed their second motion for summary disposition. Plaintiff attached a search of title from Valley Title and only used it to identify defendants as the owners of the property in his counterstatement of facts. Defendants, on appeal, contended plaintiff obtained this document two weeks after the execution of the sales contract in 2020. But defendants argue that because plaintiff had information on the title history and would have received a policy of title insurance if he signed the land contract, the fact defendants have not yet applied for commitment of title should not be a reason for plaintiff to reject the land contract.

Thus, the trial court erred in ordering specific performance on the land contract before determining defendants applied for a commitment of title insurance, which would need to be delivered to plaintiff to sign the land contract. When the trial court decided in its January 30, 2023 order there were no contingencies left to be waived, it triggered defendants' duty to apply for a commitment of title insurance before compelling plaintiff to perform on the land contract. Although plaintiff breached the trial court's January 30, 2023 order by not executing the land contract within 14 days of its entry, plaintiff cannot be expected to execute the land contract absent a title commitment, which he is entitled to receive under the terms of the sales contract.

We reverse the trial court's January 30, 2023 order compelling specific performance on the land contract, and the February 23, 2023 order granting summary disposition to defendants and cancelling the transaction for the sale of the property for plaintiff's failure to execute the land contract.

## III. CONCLUSION

The trial court did not err in interpreting the terms of the sales contract. It did however, err in ordering specific performance on the land contract before defendants applied for a commitment of title insurance. We reverse the trial court's January 30, 2023 order compelling

specific performance on the land contract, and the February 23, 2023 order granting summary disposition to defendants and cancelling the property sale for plaintiff's failure to execute the land contract, and remand this case for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen A. Feeney
/s/ James Robert Redford
/s/ Christopher P. Yates