*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF RUSSELL L. VELDKAMP, by
ROXANNE VELDKAMP, Personal Representative,
and ROXANNE VELDKAMP

UNPUBLISHED
May 23, 2024

        Plaintiffs/Counter-Defendants-
        Appellees,

v

No. 365398
Barry Circuit Court
LC No. 22-000041-CZ

DONALD RIBBLE and DONNA RIBBLE,

        Defendants/Counter-Plaintiffs-
        Appellants.

Before: YATES, P.J., and CAVANAGH and BOONSTRA, JJ.

PER CURIAM.

Defendants/Counter-Plaintiffs Donald Ribble (Donald) and Donna Ribble (Donna) (collectively, defendants) appeal by right the judgment entered by the trial court after a bench trial. The judgment orders defendants to provide to Plaintiffs/Counter-Defendants Roxanne Veldkamp (Roxanne) and the Estate of Russell L. Veldkamp (the estate) (collectively, plaintiffs) clear title to the home and property located at 11575 Winchester Drive in Shelbyville, Michigan (the property), and also enters a judgment of no cause of action on defendants' counterclaim to quiet title in favor of defendants. We reverse and remand for entry of a judgment in favor of defendants.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In October 2007, defendants and Russell Veldkamp executed a document entitled "Lease with Purchase Option" (the Lease with Option) regarding the property. The Lease with Option identifies defendants as the lessor and Russell as the lessee, and states that "Lessor leases to Lessee the premises situated at 11575 Winchester Dr., in the City of Shelbyville, County of Barry, State of Mich [sic] 49344 . . . for a term of Two year[s] to commence on Sept [sic] 1, 2007, and to end on Sept [sic] 1, 2009, at midnight." The Lease with Option, which is a printed form with handwritten additions, contains several provisions relevant to this appeal. Paragraph 1 states in

-1-

relevant part that the lessee agrees to pay "rent for the demised[1] premises" in the amount of "Nine Hundred Seventy Five Dollars ($975.00) per month," "of which Nine Hundred Seventy Five Dollars ($975.00) shall be applied to Lessee's downpayment [sic] to purchase the premises." Paragraph 5 states in relevant part: "Security Deposit. On execution of this lease, Lessee deposits with Lessor $2,000.00 Down payment [sic] Dollars, receipt of which is acknowledged by the Lessor, as security for the faithful performance by Lessee of the terms thereof . . . ." Paragraph 26 states:

> 26.      Holdover by Lessee. Should Lessee remain in possession of the demised premises with the consent of Lessor after the natural expiration of this lease, a new month-to-month tenancy shall be created between Lessor and Lessee, which shall be subject in all the terms and conditions hereof but shall be terminated on 3 days' written notice served by either Lessor or Lessee on the other party.

Paragraphs 36 and 37 contain the most handwritten additions, and provide:

> 36.      Purchase Option. It is agreed that Lessee shall have the option to purchase real estate known as: 11575 Winchester Dr, Shelbyville, Mi [sic] 49344 for the purchase price of One Hundred & Eighteen Thousand Dollars ($118,000.00) with a down payment of Two Thousand Dollars ($2,000.00) payable upon exercise of said purchase option, and with a closing date no later than Aug 1, 2009 days thereafter [sic]. This purchase option must be exercised in writing no later than [portion of the document left blank], 20[portion of the document left blank], but shall not be effective should the Lessee be in default under any terms of this lease or upon any termination of this lease.

> 37.      Other Terms. 375.00 A Month go's [sic] to Down Payment from The $975.00 Rent Payment From Sept. [sic] 1, 2007 thru [sic] Aug. [sic] 1, 2008. The total of $4125.00 OR Sept [sic] 1, 2007 Thru [sic] Aug. [sic] 1, 2009 Total of $8,625.00 with 5% [an illegible word follows.]

It is undisputed that Roxanne and Russell did not purchase the property from defendants on or before August 1, 2009. Roxanne and Russell resided on the property and paid defendants $975 per month from September 2009 through February 2022, when the trial court granted plaintiffs' motion to have future payments placed in escrow. In January 2022, plaintiffs filed suit against defendants, alleging that they had purchased the property on a land contract and requesting that the trial court order defendants to deliver clear title to the property to plaintiffs. Russell passed away in March 2022, and his estate was substituted as a party. Plaintiffs filed an amended complaint in September 2022. Plaintiffs alleged that

> under the terms of the Lease with Option to Purchase, a Land Contract was to have been entered into on August 1, 2009. Plaintiffs believe that the parties agreed to simply continue with the payments, agreeing that a Land Contract was signed or

---

[1] "Demised" property is property owned by a leaseholder and rented to a tenant under a lease agreement. See Black's Law Dictionary (9th ed), pp 497, 1300.

that that formality waived [sic] so the Plaintiffs continue [sic] to pay $975.00 expecting and believing that it would be treated as a Land Contract at 5% interest . . . . [Plaintiffs' first amended complaint, ¶ 6, p 2.]

In addition to the Lease with Option, plaintiffs attached two handwritten documents signed by Donald. The documents, dated October 9, 2012 and September 1, 2013, are both entitled "Land Contract" and recite the property's address. The documents additionally list a "Total Price" of $118,000, provide the amount of principal paid to date, and state the balance remaining on the price. Plaintiffs argued that these documents showed that both plaintiffs and defendants "believed or were working under the assumption that the Land Contract had been signed and/or that the terms and conditions of the Lease With Option were sufficient to show a Land Contract existed."

A bench trial was held in December 2022. In addition to addressing the matters raised in their complaint, plaintiffs noted that defendants had filed for bankruptcy, and plaintiffs argued that defendants had represented to the bankruptcy court that the property had been sold to plaintiffs on a land contract. Roxanne testified that she and Russell had intended to purchase the home on a land contract, and that despite its title, plaintiffs "were always told" that the Lease with Option was a land contract. Regarding the handwritten documents signed by Donald, she testified that those were provided by Donald and showed what payments had been made on a land contract and the balance still owed. She also testified that plaintiffs were unable to exercise the option to purchase in 2009. Donald testified that the handwritten documents were an attempt to "renew" a contract for the property by establishing a land contract.

At the close of proofs, the trial court held that the parties were bound by a valid land contract. The majority of the trial court's reasoning was based on extrinsic evidence, such as its conclusion that Donald had represented to the bankruptcy court that the property had been sold on a land contract, or the fact that improvements had been made to the property by Russell and Roxanne. The trial court stated that there were "contradictions" in the Lease With Option, such as a $2,000 security deposit being also listed as a down payment. The trial court also noted that the jurat signed by a notary referred to the document as a land contract. The trial court concluded that defendants were obligated to provide clear title to the property to plaintiffs. The trial court subsequently entered a judgment to that effect as described. This appeal followed.

## II. STANDARD OF REVIEW

We review for clear error a trial court's findings of fact at a bench trial; we review de novo its conclusions of law. *Knight Enterprises, Inc v RPF*, 299 Mich 275, 279; 829 NW2d 345 (2013). The interpretation of contractual language is a question of law we review de novo, *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 366-367; 817 NW2d 504 (2012), as is the determination whether contractual language is ambiguous, *Casey v Auto Owners Ins Co*, 273 Mich App 388, 394; 729 NW2d 277 (2006).

## III. ANALYSIS

Defendants argue that the trial court erred by finding that the parties entered into a valid land contract for the sale of the property. We agree.

-3-

The primary goal in the interpretation of contractual language is to honor the intent of the parties. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 473; 663 NW2d 447 (2003). Therefore, when presented with a dispute involving a contract, a court must determine what the parties' agreement is and enforce it. *Shefman v Auto Owners Ins Co*, 262 Mich App 631, 637; 687 NW2d 300 (2004). The interpretation process begins with analysis of the language of the contract itself. *Wiggins v City of* Burton, 291 Mich App 532, 551; 805 NW2d 571 (2011). Clear, unambiguous contract language must be enforced as written unless it conflicts with the law. *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005). When the language of a contract is unambiguous, interpretation is limited to the actual words of the agreement, and parol evidence may not be used to establish a parties' intent. *Burkhardt v Bailey*, 260 Mich App 636, 657; 680 NW2d 453 (2004). "The judiciary may not rewrite contracts on the basis of discerned reasonable expectations of the parties because to do so is contrary to the bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy." *Id.* (quotation marks and citation omitted). Moreover, "the unilateral subjective intent of one party cannot control the terms of a contract." *Id.* "It is beyond doubt that the actual mental processes of the contracting parties are wholly irrelevant to the construction of contractual terms. Rather, the law presumes that the parties understand the import of a written contract and had the intention manifested by its terms." *Id.* (quotation marks and citations omitted).

A contract is ambiguous if, after reading the entire contract, its language can reasonably be understood in differing ways, such as when a term is equally susceptible to multiple definitions or provisions of the contract conflict with each other. *Dancey v Travelers Prop Cas Co*, 288 Mich App 1, 8; 792 NW2d 372 (2010); *Vushaj v Farm Bureau Gen Ins Co*, 284 Mich App 513, 515; 773 NW2d 758 (2009). If a contract is ambiguous, the factfinder may consider extrinsic evidence of the parties' intent, such as the parties' conduct and past practice. *Klapp*, 468 Mich at 470. If all conventional methods of contract interpretation have failed to establish the meaning of the contract, the ambiguities are to be construed against the drafter of the contract. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 60; 664 NW2d 776 (2003).

A land contract is a contract for the sale of land "in which the purchase price is to be paid in installments (other than an earnest money deposit and a lump-sum payment at closing) and no promissory note or mortgage is involved between the seller and the buyer." *Zurcher v Herveat*, 238 Mich App 267, 291; 605 NW2d 329 (1999) (citation omitted). A valid land contract must be definite as to "parties, property, consideration, terms[,] and time of performance." *Rathburn v Herche*, 323 Mich 160, 165; 35 NW2d 230 (1948) (quotation marks and citation omitted). Further, the purchase price, number and amount of installment payments, and the rate of interest are material terms of a land contract. *Zurcher*, 238 Mich App at 291. A land contract must satisfy Michigan's statute of frauds. See MCL 566.108.

In this case, the Lease With Option is deficient in several key ways to be considered a valid land contract. The contract does not explicitly provide a total number of payments over a definite term of years. Further, and more importantly, while Section 36 provides a purchase price, it only does so in the context of an option to purchase with a closing date no later than August 1, 2009. It is undisputed that Russell did not exercise his option to purchase and close on the property on or before that date. No other provision of the document provides a purchase price to be paid over a

term of years. And even if Section 37 is interpreted as providing a five-percent interest rate, it at best provides such a rate until August 1, 2009.

Additionally, the handwritten documents provided to plaintiffs by Donald in 2012 and 2013 do not establish that the parties entered into a valid land contract in 2007. While they do appear to list a purchase price for the subject property that includes credit for payments made under the Lease With Option, there is no indication whether these documents represent statements of the progress plaintiffs had made in paying off a land contract, or merely offers to enter into such a contract. Nor is there any indication that these documents are incorporated with the original agreement. Nothing in the Lease With Option indicates that the handwritten documents provided by Donald in 2012 and 2013 are incorporated by reference, and nothing in the handwritten documents indicates an incorporation of the Lease with Option. See *Whittlesey v Herbrand Co*, 217 Mich 625, 627; 187 NW2d 279 (1922) (stating that where "one writing refers to another, the intention of the parties is to be gathered from the two instruments taken together."). Further, Donald testified that these documents were attempts to establish a land contract after Russell did not exercise his purchase option in 2009. Although the trial court makes much of Donald's use of the word "renew," it is clear from context that Donald believed that the Lease with Option had terminated without the purchase option being exercised. Roxanne appears to have believed that these documents represented payments made under an existing agreement made in 2007. In the absence of any language indicating that the handwritten documents were incorporated with, modified, or replaced the Lease with Option, and the absence of any indication that Russell accepted either document as an offer to enter into a land contract, see *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452-453; 733 NW2d 766 (2006), the trial court erred to the extent it considered these documents along with the Lease with Option itself.

As noted, the Lease With Option lacks several of the required elements for a land contract. Further, the contract is not ambiguous, and the trial court therefore was not permitted to rely on extrinsic evidence to determine the parties' intent under the agreement. *Klapp*, 468 Mich at 470. Read as a whole, the Lease with Option is clearly a two-year lease with an option to purchase the property for a certain price by a certain date. The document repeatedly refers to "rent" payments, provides for late fees, limits the use of the premises by the lessee, prohibits assignment and subletting without the lessor's consent, and other features typical of a leased residence. It further provides that upon the lease's expiration in 2009, a month-to-month tenancy would be created, terminable by either party with 3 days' notice—a provision at odds with the idea that the agreement was a land contract that remained valid until 2021. Further, as stated, the references to a "down payment" or an interest rate only refer to payments made until August 1, 2009. In context, these references refer to some manner of crediting these payments against the down payment required to purchase the property *if that purchase occurred*; there is no indication from the document that the monthly rent payments would otherwise be credited against the purchase price. Read as a whole, the Lease With Option cannot reasonably be understood in different ways, and does not contain irrevocably conflicting provisions. See *Dancey*, 288 Mich App at 8; *Vushaj*, 284 Mich App at 515. The trial court therefore erred by considering extrinsic evidence, such as documents from defendants' bankruptcy proceedings and testimony about improvements to the property, and by concluding that the parties had entered into a valid land contract.

We conclude that the trial court erred by determining that a valid land contract existed, and by ordering defendants to provide clear title to the property to plaintiffs. We therefore reverse the

trial court and remand for entry of a judgment in favor of defendants. Because we reverse on these grounds, we need not consider defendants' arguments concerning the trial court's alleged evidentiary errors.

Reversed and remanded for entry of judgment in favor of defendants. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra