*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

BENTZION PROPERTIES, LLC,

        Plaintiff/Counterdefendant-Appellant,

v

ELITE PROFESSIONAL MANAGEMENT, LLC,
and WESTCOMBE MANOR 809, LLC,

        Defendants/Counterplaintiffs-
        Appellees,

and

ELITE REAL ESTATE PROFESSIONAL
MANAGEMENT, JENNIFER OLIVER, and ADI
ASRAF,

        Defendants-Appellees.

UNPUBLISHED
June 11, 2026
1:27 PM

No. 374072
Genesee Circuit Court
LC No. 18-111214-CK

---

Before: CAMERON, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

This case revolves around the sale of an apartment complex and the agreements concerning the sale. The parties sued each other to quiet title of the property, among other claims, after the apartment complex burned down and an insurance company issued a check payable to the parties for $210,000. After finding that the parties' agreement constituted a land contract, the trial court granted defendants' motion to quiet title, decided that defendants were entitled to the insurance proceeds, granted summary disposition in favor of defendants, and dismissed all other claims in the suit. Plaintiff now appeals, arguing that trial court erred in finding that the agreement was a land contract and dismissing plaintiff's conversion claim. Because the trial court did not err, we affirm.

## I. BACKGROUND

-1-

Plaintiff entered into two contracts with different defendants[1] for the sale of the same apartment complex. The first contract was a "Purchase and Sale Agreement" signed by defendant Jennifer Oliver in her personal capacity. That agreement required Oliver to pay $160,000 in full at closing. It does not appear from this record that Oliver took any steps towards fulfilling her obligations under the Purchase and Sale Agreement; instead, she purportedly assigned her rights and duties under that agreement to Westcombe Manor 809, LLC, a company to which she was a member. Plaintiff and Oliver both agree that they failed to close on the apartment complex under the original Purchase and Sale Agreement.

Plaintiff subsequently entered into a second agreement with a different defendant, this time Westcombe itself, with Oliver being the authorized signatory for the company. The second contract was titled "Contract for Deed." The copy of the document provided on appeal is barely legible. Moreover, it is unclear from the record whether the Contract for Deed was intended by the parties to supersede entirely the Purchase and Sale Agreement, or merely modify it. For instance, a form paragraph in the Contract for Deed entitled "Entire Agreement" was apparently crossed out. Oliver was not a party to the second document (although she signed on behalf of Westcombe), and Westcombe was not a party to the first document, although it was later an assignee.

For purposes of this appeal, however, this is a distinction without a difference, as the Contract for Deed sets forth the material terms and conditions relevant to this dispute, namely, the parties (Bentzion as the seller and Westcombe as the purchaser); the purchase price ($160,000); the payment schedule ($120,000 down payment upon execution of the agreement and $40,000 due approximately three months after execution); the interest rate (0% per year); and the liability insurance (responsibility on the purchaser, Westcombe, to maintain liability insurance). Thus, if the Contract for Deed is read as merely modifying the earlier agreement, it did so in all respects material to this appeal. In simpler terms, this dispute focuses on the terms and conditions of the parties' agreement as set forth in the Contract for Deed.

Before Westcombe finished making the required payments under the Contract for Deed but after the deadline for such payments, the apartment building burned down. Before the fire occurred, Oliver had obtained an insurance policy for the property, which included coverage for loss due to fire, and Oliver and defendant Elite Real Estate Professional Management were named in the policy, but not Westcombe nor plaintiff. The insurance company ultimately issued a check for $210,000 for the loss, payable to plaintiff and all of the defendants.

---

[1] It appears from the record—though it is not certain—that "Elite Professional Management, LLC" and "Elite Real Estate Professional Management" are the same entity. Similarly, it appears from the record—though again, it is not certain—that defendant Adi Asraf's only involvement in this dispute is as a member of Westcombe Manor 809, LLC. What is clear from the record, however, is that the material dispute relevant to this appeal involves plaintiff, defendant Westcombe, and defendant Oliver; therefore, we need not dwell any further on these other loose threads in the factual record.

Plaintiff sued defendants on several claims, including quiet title and conversion of the insurance proceeds, arguing that the agreement was forfeited after defendants failed to pay as agreed, plaintiff provided notice of default, and defendants failed to cure the default. Defendants countersued to quiet title, arguing that the agreement was a land contract, plaintiff did not take the proper steps to terminate the contract and to enforce proper remedies, plaintiff accepted payments after the notice of breach, and defendants were ready and willing to cure the default and pay the remaining balance under the contract.

After several summary disposition motions filed by both sides, the trial court ultimately granted defendants' motion for summary disposition under MCR 2.116(C)(10). The trial court found that there was no genuine issue of material fact that the parties intended for the Contract for Deed to be a land contract, given that the contract discussed and set the interest rate at zero and outlined deadlines and amounts for two separate payments. Further, the trial court found that the equities did not favor plaintiff, considering defendants paid almost all of the purchase price and plaintiff accepted payments after the notice of breach, which indicated that plaintiff did not consider the agreement terminated. Given this, defendants were entitled to a deed upon final payment. For the insurance proceeds, the trial court found that defendants were entitled to use the insurance proceeds to repair the property and that it was error for plaintiff to be named as a payee, given that it was not a named or additional insured on the policy.

Plaintiff moved for reconsideration, and the trial court denied the motion but amended its previous order to release the $15,000 held in escrow: $10,500 to plaintiff to satisfy the balance owed on the contract and the remaining $4,500 to defendants.

Plaintiff now appeals.

II. ANALYSIS

A. QUIET TITLE

On appeal, plaintiff argues that the trial court erred in granting defendants' motion for summary disposition on their quiet-title claim because a question of fact remained on whether the parties entered into a land contract. The Court reviews de novo the trial court's ruling on summary disposition and interpretations of contractual provisions. *Zwiker v Lake Superior State Univ*, 340 Mich App 448, 484; 986 NW2d 427 (2022). A motion for summary disposition under MCR 2.116(C)(10) should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. "There is a genuine issue of material fact when reasonable minds could differ on an issue [of fact] after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

MCL 600.2932(1) provides that a person "who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff." Quiet-title actions are equitable, and the burden is on the party seeking to quiet title to prove that it has title. *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Rd Comm'n*, 236 Mich App 546, 550; 600 NW2d 698 (1999).

For the parties' dueling quiet-title claims, the dispositive issue in the trial court and on appeal is whether the agreement made was a land contract and, therefore, was not terminated when defendants defaulted. If the contract was a land contract, then the forfeiture clause is limited by the occurrence of a material breach and only certain remedies are permitted under the law; if the contract is not a land contract, and instead is simply a contract for the sale of land, then a forfeiture clause does not violate public policy and can be enforced. *Majestic Golf, LLC v Lake Walden Country Club, Inc*, 297 Mich App 305, 326; 823 NW2d 610 (2012), rev'd on other grounds 495 Mich 909 (2013); MCL 600.5750. Land contract purchasers are provided with certain statutory protections that supersede those provided by contracts for the sale of land. *Gruskin v Fisher*, 405 Mich 51, 58-59; 273 NW2d 893 (1979). Specifically, here, once a buyer fully pays and completes performance under a land contract, the seller must convey legal title to the buyer through deed. MCL 565.361(1).

The difference between a land contract and a contract for the sale of land may cause some confusion. Although both a land contract and a contract for the sale of land contain terms identifying the parties, the property, the price, and the consideration, *Zurcher v Herveat*, 238 Mich App 267, 282; 605 NW2d 329 (1999); *Rathbun v Herche*, 323 Mich 160, 165; 35 NW2d 230 (1948), for an agreement to be a land contract, more is needed. This Court has attempted before to illustrate the differences between a land contract and a contract for the sale of land:

> A contract for the sale of land is, quite simply, a purchase agreement such as the one at issue in this matter. The term "land contract" is commonly used in Michigan as particularly referring to "agreements for the sale of an interest in real estate in which the purchase price is to be paid in installments (other than an earnest money deposit and a lump-sum payment at closing) and no promissory note or mortgage is involved between the seller and the buyer." A land contract is therefore an executory contract in which legal title remains in the seller/vendor until the buyer/vendee performs all the obligations of the contract while equitable title passes to the buyer/vendee upon proper execution of the contract. While in modern practice purchase agreements and land contracts are often not the same document, in earlier times they often were. The interchangability of these two types of agreements in earlier practice perhaps explains why the amount and time of installment payments and the rate of interest were listed as material terms of contracts for the sale of land because, in fact, such terms were (and are) essential elements of a land contract. [*Zurcher*, 238 Mich App at 291 (internal citations omitted).]

Therefore, for a contract involving the sale of real property to be a land contract, it must, among other things, (1) list the installment payments' amounts and dates, and (2) provide an interest rate.

Here, the Contract for Deed contained all the additional requirements for a land contract. First, the Contract for Deed provided for installment payments and listed the amounts and times for those payments. Although the Contract for Deed may have only called for two payments, "paying in installments refers to any transaction where full payment does not occur simultaneously with the transfer" of the purchase. *Grigg v Robinson Furniture Co*, 78 Mich App 712, 726; 260 NW2d 898 (1977) (cleaned up). The second payment was to occur several months later, after the first payment, and so, it is an installment payment under *Zurcher*.

Second, the Contract for Deed provided for an interest rate of 0%. If the parties had omitted the interest provision altogether, then their agreement might well have been missing an essential term to be a land contract. The fact that the contract explicitly stipulated and provided for an interest rate of zero percent suggests that the parties intended to include all essential terms to form a land contract, even if one of those terms had no practical effect. It is also notable that the Contract for Deed did not involve a promissory note or mortgage between plaintiff and defendants.

The trial court did not err in finding that the parties' agreement constituted a land contract and quieting title in defendants' favor, given that defendants were ready to complete their obligations under the contract and receive legal title from plaintiff. On this issue, plaintiff on appeal argues that "[b]ecause questions of fact remained in the case on the question of whether the parties entered into a land contract or merely a contract for the sale of land, the circuit court erred in granting summary disposition in favor of the defendants on their quiet title action." Contract interpretation, and therefore whether parties' agreement was a land contract, is a question of law. See *Sweebe v Sweebe*, 474 Mich 151, 154; 712 NW2d 708 (2006). Further, interpreting unambiguous contract terms and the intent of the parties' using these terms is a matter of law. *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 292; 778 NW2d 275 (2009). The essential terms that support finding a land contract (installment payments and interest rate) are unambiguous in the parties' agreement and therefore are decided as a matter of law.

## B. CONVERSION

Plaintiff next argues that the trial court erred in granting summary disposition on its conversion claim in defendants' favor. Conversion is an "act of dominion wrongfully exerted over another's personal property in denial or inconsistent with his rights." *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 497 Mich 337, 346; 871 NW2d 136 (2015) (cleaned up). To establish conversion, plaintiff must prove that it had a right to the check proceeds and that the proceeds were paid "to a person or entity unentitled to enforce the instrument or receive payment." *R A D Constr, Inc v Davis*, 347 Mich App 716, 730-731; 16 NW3d 328 (2023), overruled in part on other grounds by *Webster v Osguthorpe*, ___ Mich ___; ___ NW3d ___ (2025) (Docket No. 166627). "An action for conversion lies where an individual cashes a check and retains the full amount of the check when he is entitled to only a portion of that amount." *Citizens Ins Co of America v Delcamp Truck Ctr, Inc*, 178 Mich App 570, 576; 444 NW2d 210 (1989).

When a check is made payable to multiple people conjunctively, not alternatively, the check may only be negotiated, discharged, or enforced by all of the payees. *Pamar Enterprises, Inc v Huntington Banks of Mich*, 228 Mich App 727, 733; 580 NW2d 11 (1998) (holding that because the check was made payable to both the plaintiff "and" the defendant, the endorsement of the defendant alone was not sufficient). To prevent unjust enrichment, though, liability is not imposed when only one payee deposits the check if the proceeds of the check reach the proper payee and the drawer suffered no loss. See *id.* at 737.

Furthermore, insurance proceeds should be applied in accordance with the land contract. *Wilson v Fireman's Ins Co of Newark, New Jersey*, 403 Mich 339, 343-344; 269 NW2d 170 (1978). This Court has previously held that where an insurance check is made payable to both the buyer and the seller, "where a land contract provides that the vendee must purchase insurance and must maintain the premises and buildings in good condition[,] and where the vendee is not in

default, the vendee is entitled to apply the insurance proceeds to repairs actually made." *Miller v Van Kampen*, 154 Mich App 165, 170; 397 NW2d 253 (1986).

Under the Contract for Deed, defendant Westcombe was liable for any damage or loss and required to maintain liability insurance on the premises. Plaintiff does not dispute that these conditions were met. Moreover, plaintiff fails to offset any of the claimed amount by the payments made by defendants. See *id*. at 167 ("Defendant contended that the insurance proceeds should be applied to the balance due on the land contract."). Instead, plaintiff argues that it was entitled to all of the proceeds because it was a payee on the check.

Plaintiff was entitled to the purchase price it negotiated with defendant Westcombe. Plaintiff accepted late payments, and with the release of $10,500 from escrow, plaintiff has received the full amount it bargained for. To receive any additional proceeds from the insurance check would result in plaintiff's unjust enrichment. Because the trial court properly granted summary disposition in regard to quieting title and conversion as a matter of law, there is no question of fact that remains with regard to plaintiff's conversion claim.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle